JNO. S. SAMMIS, APPELLANT, VS. EDWARD M. L'ENGLE ET ALS., APPELLEES.

1. An attorney having money collected for a client in his hands, which money is claimed by two creditors of such client, his client disclaiming any interest in favor of himself, the attorney not being so fully cognizant of the facts as to determine the right, may properly bring a bill seeking a decree against the creditors that they interplead and contest their respective claims between themselves.

2. The practice upon answer and replication in an interpleading suit properly brought, is to decree the bill to be properly filed, to dismis the complainant with his costs up to that time upon his placing the fund in the registry of the court, and to direct an action to be brought or an issue or a reference to ascertain and settle the rights of the defendant claimants to the fund as the case may require. In this case there was a reference which was proper.

3. A cross bill setting up substantially the same facts as the answer, is inadmissible in an interpleader suit where the defendant can have all the affirmative relief he is entitled to without it under the decree of reference to ascertain his right.

4. A debtor places a chose in action in the hands of his attorney, to whom he is indebted, with directions, not in writing, to collect and apply the proceeds, so far as necessary, to the payment of his debt. This is a particular assignment good in equity, and the assignee has an equitable right to enforce the debt at law in the name of the assignor. Such assignment places the chose in action beyond the control of the assignor, and is good against a subsequent assignment by him, or a subsequent attaching creditor.

5. In a contest between an administrator and an alleged creditor of his intestate, the creditor is not under the statutes of this State a competent witness in regard to any transaction or communication between him and the deceased unless such administrator is examined as to such transaction in his own behalf, or testimony of such deceased person as to it is given in evidence.

6. Unless the case presented by the record is one in which there is a plain and adequate remedy at law, or some jurisdictional defect, or extreme multifariousness is disclosed, it is the practice of this court where the decree is otherwise proper to disregard objections of a technical character made here for the first time. Hence, a defendant to a bill of interpleader after unsuccessfully contesting the claim of a co-defendant and after decree to interplead between themselves not objected to, will not be permitted to object here for the first time that the bill is brought by such co-defendant in the capacity of surviving partner of a firm against himself and another as administrators of the estate of his deceased partner.

Appeal from the Circuit Court for Duval county.
The facts of the case are stated in the opinion.

*C. P. & J. C. Cooper* for Appellant.

*John Earle Hartridge* and *Wm. B. Young* for Appellees.

Mr. Justice Westcott delivered the opinion of the court:

This is a bill of interpleader brought by E. M. L'Engle as surviving partner of the firm of Sanderson & L'Engle against John S. Sammis, the persons composing the firm of Smallwood, Hodgkiss & Co., one of whom was J. L. Smallwood, and against himself and Theodore Hartridge, administrators of the estate of John P. Sanderson. The suit arises out of moneys in L'Engle's hands as surviving partner of the partnership of Sanderson & L'Engle, attorneys at law, Sanderson, the deceased partner, being the intestate of whose estate he and Hartridge are administrators, and the moneys which are the subject of controversy are the proceeds of claims in favor of J. L. Smallwood & Co., a firm consisting of J. L. Smallwood and Thomas J. Perkins against Thomas, Livingston & Co., which L'Engle as surviving partner of the law firm has collected.

From the testimony of Smallwood it appears that the

claim of J. L. Smallwood & Co. against Thomas, Livingston & Co. had become an asset of Smallwood, Hodgkiss & Co. in A. D. 1870.

L'Engle as administrator and Sammis in his own right respectively claim this fund.

The decree of the Circuit Court being in favor of Sanderson's administrators and against Sammis, he (Sammis) appealed therefrom.

Sanderson's administrator claims in two aspects. First, by virtue of an assignment by Swallwood, as a member of the firm of Smallwood, Hodgkiss & Co., of the claim against Thomas, Livingston & Co. to Sanderson during his life time for collection and application of its proceeds to payment of debt due Sanderson by Smallwood, Hodgkiss & Co. Second, by virtue of a judgment of L'Engle and Hartridge, Sanderson's administrators, against Smallwood, Hodgkiss & Co., and a garnishment thereon to E. M. L'Engle, the surviving partner of the firm of Sanderson & L'Engle, who has possession of the funds collected on the claim against Thomas, Livingston & Co.

Sammis is a judgment creditor of Smallwood, Hodgkiss & Co., and claims priority by virtue of a garnishment to E. M. L'Engle, he (Sammis) insisting that his attachment of the funds in the hands of E. M. L'Engle, surviving partner of the firm of Sanderson & L'Engle, has priority on account of alleged irregularities in the issuing of the attachment in favor of Sanderson's administrators, the judgment and garnishment in the suit of the administrators of Sanderson against Smallwood, Hodgkiss & Co. being prior to the garnishment and judgment in the suit of Sammis against Smallwood, Hodgkiss & Co.

Sammis also claims by virtue of equities alleged to exist between himself and Sanderson during his life time and Smallwood, Hodgkiss & Co.

The facts in reference to the assignment are that on the first of October, A. D. 1870, Smallwood, Hodgkiss & Co., as admitted by them, were indebted to John P. Sanderson in the sum of $8,773.05. This was subsequently reduced to $5,773.05. In January, A. D. 1871, Smallwood, representing the firm of Smallwood, Hodgkiss & Co., (according to his own testimony in this record,) said to Sanderson, " that a claim of my firm on Thomas, Livingston & Co., of Madison, Florida, was the most available of our assets that I could offer, and much more than enough to pay (him) some thirty thousand dollars, even at a compromise settlement, and that he could so apply enough of the proceeds of that claim when collected. I stated to J. P. Sanderson that I specially set apart the claim of my firm on Thomas, Livingston & Co., of Madison, Florida, to collect as my attorney and pay the balance due himself from my firm as appears by the statement of this account." The account here referred to is the account of J. P. Sanderson with Smallwood, Hodgkiss & Co., showing balance due him of $8,773.05 already referred to. Smallwood says again: I directed John P. Sanderson to pay the balance due to himself out of the proceeds of the collection of our claim against Thomas, Livingston & Co. This is the testimony of Sammis' own witness.

It clearly establishes a parol assignment in 1871 by a debtor to his creditor of a claim with power to collect the same and the right to apply the proceeds so far as necessary to the payment of his debt.

The fact that Sanderson & L'Engle were Smallwood, Hodgkiss & Co.'s attorneys makes no difference, because they also represented Sanderson. Alexander vs. Adams, 1 Strob. (Law), 47. A positive direction to an attorney to apply the proceeds of a particular claim to a debt due himself accompanied by a delivery is an assignment of the debt

to him for that purpose. We take it from the testimony that the claim here assigned was an account against Thomas, Livingston & Co., arising from commercial relations with Smallwood, Hodgkiss & Co., as his factors. Can such an assignment be sustained, and what is its effect?

The assignment here is " special or particular." The delivery of the subject assigned is shown, and in such a case the assignment need not be in writing. Brown vs. Chamberlain, Miller & Co., 9 Fla., 464.

In such case also the assent of the creditor, even if assent was necessary, is presumed. If the assignment here was of " a book debt " against Thomas, Livingston & Co. it is good in equity. The debt is a chose in action, and like other choses in action, except negotiable securities, is not assignable at law, but all choses in action may be assigned in equity, and the assignee has an equitable right which he may enforce at law in the name of the assignor. By this assignment the equitable interest in the debt as between the parties to it immediately passed to the assignee. Such an assignment as exists in this case places the chose in action beyond the future control of the assignor, and is good against a subsequent attaching creditor who cannot stand on any better footing than his debtor, and if his debtor has no equitable interest in the chose in action as a matter of course his creditor can get none by his garnishment. Dix vs. Cobb, 4 Mass., 508; Alexander vs. Adams, 1 Strob. (Law), 47. The garnishment proceedings in this case, as well as the suits upon which they are based, all being long after this assignment as to them, it is only necessary to say that they cannot be effective to bind these moneys in the hands of E. M. L'Engle, the surviving partner of Sanderson & L'Engle, which had been the subject of a previous special assignment.

What has been said disposes of this appeal, unless there

is something in the alleged relations of Sammis to Sanderson and Smallwood, Hodgkiss & Co., which would give Sammis a claim against this fund, or there is something in the objection of the appellant taken to the proceedings herein in his petition of appeal.

The only testimony in this record from which any claim can be made by Sammis against Sanderson arising out of the debt of Smallwood, Hodgkiss & Co. to Sammis, and that of Smallwood, is that of Sammis himself. He, Sammis, states its history to be: That before the war Reed & Hooper, of Boston, held the obligation of Sanderson & Sammis for part of a debt which they (S. & S.) had incurred as endorsers of a note of the Florida Central Railroad Company. In October, 1870, Sanderson and Sammis compromised the debt, each of them giving Reed & Hooper their several note for $5,000. Sammis at the time had the money to pay the $5,000. This sum he loaned to Smallwood, Hodgkiss & Co., they giving him their note for $5,000. Of this transaction Sammis testifies that they, Smallwood, Hodgkiss & Co., had failed. "Smallwood, Hodgkiss & Co. then returned to me $2,000. I surrendered their note for $5,000 and took their note for balance due, principal and interest, $3,153.27." I then took up myself the draft in favor of Reed & Hooper.

Sammis testifies: "I would not have loaned the money to Smallwood, Hodgkiss & Co., except upon the representation of Sanderson, who told me that he had done their business for years, and that they were worth two hundred thousand dollars to three hundred thousand dollars, and he induced me to let them have the money. Sanderson told me that he had or should let them have his $5,000." To this testimony, so far as it spoke of acts or transactions of Sanderson, objection was made by counsel for Sanderson's administrators. The objection was sustained, and it was excluded in the consideration of the case.

We think this action was conformable to law. The contest here is between Sanderson's administrators and Sammis. The statute regulating the subject provides that no party to such an action as this shall be examined as a witness in regard to any transaction or communication between such witness and the person at the time of the examination deceased, against the administrator of such deceased person. Sammis' testimony here is both within the letter and spirit of this act and is inadmissible.

We also think that what is here testified to, even if admissible, does not constitute an actionable false and fraudulent or deceitful representation of the financial condition of Smallwood, Hodgkiss & Co. by Sanderson, nor is it a guarantee of Sammis' debt. If it was such guaranty, not being in writing, it would be ineffective to bind Sanderson. We also think that even if it was in terms a guaranty and in writing it would create no lien upon these funds as against Sanderson's administrators, as nothing here stated has reference to the chose in action assigned. But these matters it is unnecessary to determine, as the testimony was clearly inadmissible under the statute.

The testimony of Smallwood, Sammis' own witness, as to any direction by him to Sanderson & L'Engle, or either of them to pay Sammis from the proceeds of the claim against Thomas, Livingston & Co., is : " I do not recollect that either my firm or myself directed Sanderson & L'Engle or L'Engle to apply the proceeds of their collection from Thomas, Livingston & Co. to the payment of the note in favor of J. S. Sammis. I believe that I did not give any direction about the matter except what I have previously stated as given to Sanderson," (which was the direction to collect it and pay his own debt,) before the middle of January, 1871, in the office of Sanderson, (which was in Jacksonville,) not doubting at that time that I would

soon be able to collect and pay all debts and demands against my firm and have a large surplus remaining still. I may have said to E. M. L'Engle that I wished to pay the notes to Sammis at some subsequent time after the first pledge given to Sanderson, at which time the note given to Sammis was not in existence but was made and created afterwards on the order of Sanderson. As to the conversation in the office of Sanderson & L'Engle occurring in 1871, he says: " I did expect and intend to pay it (the Sammis note) out of the collection from Thomas, Livingston & Co. by Sanderson & L'Engle, my attorneys, not for a moment doubting that the product of that claim would be more than sufficient to pay both claims of Sanderson and Sammis. I think I may have so stated to E. M. L'Engle but no mode of payment was ordered that I remember." He states further that he made the acquaintance of Mr. Sammis in New York, in 1871, by his (Sammis') presenting an order or draft drawn on his (Smallwood's) firm by John P. Sanderson for the sum of money represented by the note of his firm to Sammis of January 5, 1871, for $3,044.92; that he does not remember having had any other business with Sammis directly, nor indirectly with anyone else for him, nor did said J. P. Sanderson explain, that I remember, the nature of the transaction between himself and Sammis which made my firm become debtor to Sammis. Smallwood says that according to his recollection when the note was given, Sammis preferred the note to a simple transfer of the amount to his credit on the books in account. This witness also states that if there was any joint connection with Sanderson and Sammis as to the Sammis note he was not aware of it. As to the Sanderson and Sammis draft in favor of Reed & Hooper, of Boston, upon Smallwood, Hodgkiss & Co., as to which Sammis testified, this witness says that Smallwood, Hodgkiss & Co. accepted such a

draft at 90 days, payable in Boston to Reed & Hooper; that the balance due by them, Smallwood, Hodgkiss & Co., on account to Sanderson being $8,703.05, being "a guarantee for accepting;" that he thinks Sanderson may have obtained from Sammis two United States bonds to approximate and be about $10,000 including the balance of account as security; that his firm suspended about 30th of December, 1870, and that Sanderson had to meet the draft. He says also that if Sammis had an interest with Sanderson in any way he was not aware of the nature of it at all; that he supposed that Sanderson's order on his firm for which the firm gave their note to Sammis included the two United States bonds.

This testimony establishes no relation between Sanderson and Sammis as to the Sammis debt except that Sammis being the payee of a draft by Sanderson upon Smallwood, Hodgkiss & Co. accepted their note (the foundation of his present claim) for it, thus as a matter of course releasing Sanderson of any liability which may have before that time existed, and which the draft represented. Sammis was simply a creditor of Smallwood, Hodgkiss & Co., and according to Smallwood's testimony had no claim upon any particular asset of Smallwood, Hodgkiss & Co. Sammis testified also as to Smallwood's statements to him in reference to his claim. This was excepted to as heresay, and the exception was sustained. Sammis now insists that Smallwood is a party to this suit and that in that aspect his declaration and acts are admissible as testimony.

We deem it unnecessary to decide the question presented, as the testimony even if admissible should not have changed the result. The testimony excluded if shown by the record must be of such character as would properly change the decree, or the case will not be remanded. Material exclusion, not simple exclusion, is the error.

Sammis says that when he had the settlement with Smallwood, Hodgkiss & Co. in 1871, he (Smallwood) said that he had "a large amount of money due him and that he had ordered me to be paid out of the first moneys collected in Florida; that Sanderson & L'Engle were his (Smallwood's) attorneys, and that L'Engle had been so instructed by him." Sammis also says that L'Engle told him that he had been so instructed. He also says that upon writing to Smallwood, Hodgkiss & Co. subsequently in reference to the matter, Smallwood replied, "don't bother me with this matter, I have left it with my attorney L'Engle, who will see that you are paid, or words to that effect;" that he told L'Engle what Smallwood had said, and that L'Engle replied: "Yes, he was their authorized agent, and in a few days would have ample means in his hands to pay me and would see that I was paid." This testimony must be construed in connection with that of Smallwood. Thus construing it the result is simply that Smallwood anticipated that the sum to be realized from the assets of Smallwood, Hodgkiss & Co. would be at an early date sufficient to liquidate both debts and this he told Sammis. This general order, too, to pay money out of the first collections was given subsequent to the special assignment to Sanderson, which assignment was not subject to revocation by Smallwood at that time. Again, to the extent that there is irreconcilable conflict between Sammis and Smallwood, his own witness, credit should be given to the latter because he makes no claim to the fund, disclaims any interest except that it be appropriated according to law, and his statement of the entire transaction is more intelligible and consistent than that of Sammis.

There remains to be considered but one ground of appeal which appears to have been the subject of judicial action in the Circuit Court, that is the order of the court dismiss-

ing the cross-bill of defendant Sammis. The cross bill here is substantially the answer to the bill of interpleader and is inadmissible. No rule of practice authorizes such a proceeding upon a bill of interpleader. In this case the answers of the several defendants set up their respective claims to the fund and neither denied the right of complainant to a decree to interplead. The proper practice upon the answers and replication here was for the court to decree that the bill is properly filed, to dismiss the complainant with his costs up to that time, and direct an action to be brought or an issue or a reference to ascertain and settle the rights of the defendants to the fund in controversy. Such a decree was made and a reference directed here. There was no error in dismissing the cross-bill and the proper practice was followed. City Bank vs. Bangs, 2 Paige, 570 ; Gibson vs. Goldthwaite, 7 Ala., 281.

It is now objected here for the first time in this case that the case made by the bill is one not the proper subject of a bill of interpleader. We will not hear such an objection here for the first time where by the proceeding of the appellant he has clearly waived it in the Circuit Court. Unless the case presented is one where there is a plain and adequate remedy at law, or where the record discloses some jurisdictional defect, or there is extreme multifariousness, it is the practice of this court to affirm the action of the Circuit Court, if it is otherwise proper. In this case, however, we think the bill lies. This money is in L'Engle's hands, collected by him as the attorney of Smallwood, Hodgkiss & Co. They decline to take it, say they are insolvent, and leave him subject to be harassed by the suits of claimants claiming as creditors of his client. This bill of interpleader sets up the fact that he is not so fully advised of the facts as to act with safety, or to determine for or against the claim of the one or the other. This is not

the case of an attorney filing a bill seeking a decree of interpleader between his client and a stranger. He stands here in the same privity to each claimant. The attorney of Smallwood, Hodgkiss & Co. here stands in the same relation to two of their creditors, and this is a proper case for an interpleading suit. For the same reason we think the appellant cannot now be heard to object that L'Engle cannot as surviving partner sue himself as administrator.

The objection is purely technical, and when urged here for the first time should be disregarded. The appellant has waived it by submitting to a hearing of his case upon the merits. Nor are we by any means certain that such an objection should prevail to the extent of dismissing the bill in a case so peculiar in its facts as this is.

Decree affirmed.