John COSTELLO, as Trustee of the Estate of William Jason Evans, Bankrupt, Appellant,

v.

BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, a Corporation, Appellee.

No. 15321.

United States Court of Appeals Ninth Circuit.

June 24, 1957.

Shapro & Rothschild, Daniel Aronson, Jr., San Francisco, Cal., for appellant.

Samuel B. Stewart, George Chadwick, Jr., San Francisco, Cal., for appellee.

Before STEPHENS, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Plaintiff, Trustee in Bankruptcy of the estate of William Jason Evans, ap-

peals from a judgment of the United States District Court for the Northern District of California, Southern Division, disallowing his claim under Section 70, sub. e, of the Bankruptcy Act [1] to recover the sum of $20,300.00, which represents the aggregate amount collected by the defendant, Bank of America, from the State of California as assignee of the bankrupt's contract for the construction of a bridge. The bankrupt, doing business as Evans Construction Co., entered into said contract with the State on September 15, 1948. That same day the bankrupt executed an assignment to appellee of the right to money due or to become due under the contract, as security for financing the performance of the job. The bankrupt had previously assigned the same rights to Glens Falls Indemnity Company from which appellee obtained a subordination agreement. No notice of the assignment was filed with the county recorder. However, actual notice was given to the obligor, the State. Thereafter, appellee made a series of loans to the bankrupt. From time to time, as the work progressed, the State Controller drew and issued warrants payable to the order of appellee. None of these payments were made within four months prior to the filing of the voluntary petition in bankruptcy. In fact, the last payment is dated April 7, 1949, whereas the petition was not filed until February 27, 1950. But at the time of the assignment, the bankrupt did have certain creditors who remained such when the petition was filed. The Trustee claims that the failure to record the assignment in accordance with the then existing provisions of Section 3017 et seq., of the California Civil Code renders the assignment invalid and a constructive fraud as to at least some of the bankrupt-assignor's creditors, and therefore entitles the Trustee to recover all moneys paid pursuant to the invalid assignment.

The main issues tendered by this appeal are (1) whether the right assigned appellee constituted an "account" within the meaning of Section 3017, and, if so, (2) whether the trustee in bankruptcy can rely on the failure to record the assignment as a basis for recovering the payments made thereunder.

Appellant contends that this transaction entailed the assignment of an "account"; that the assignment, in the admitted absence of recordation, is invalid; and hence, he has a supportable claim to all moneys collected under it. Appellee argues that the State's indebtedness was not evidenced by an "account." And further, even assuming recordation was required, collection by the assignee eliminates or renders insignificant non-compliance with the Code requirements.

The court below accepted and adopted all of appellant's contentions except the ultimate one. It held that this was an assignment of an "account" and necessitated the filing of notice. It held the omission to comply with the statute rendered the assignment invalid. But despite this infirmity in the assignment, the court held the assignee could retain payments made to it more than four months prior to the filing of the petition in bankruptcy. When any portion of the account is collected, reasoned the District Court, the account is pro tanto extinguished and the statute cannot apply if there is nothing left upon which it can operate. A contrary conclusion upon that identical point was reached by another able district judge in this Circuit in Menick v. Carson, D.C., 96 F.Supp. 817.

To understand fully the questions presented herein and the applicable law which controls their determination, it is necessary to review a bit of legislative

[1]. 11 U.S.C.A. § 110, sub. e. The provision reads in part: "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor."

history. The origin of the issues which confront us is the commercial practice of non-notification financing of accounts receivable, and the legislative endeavors to maintain that practice. Ironically, the instant cause does not involve the keystone of this business system, namely, non-notification to the account debtor. Nevertheless, the case at bar must be considered in the light of principles and enactments governing this practice.

The financing of accounts receivable on a non-notification basis developed and flourished in modern times in response to the ever present need for working capital. When this useful method of credit accommodation is employed, the accounts are assigned as security for a loan or loans upon the mutual understanding between the assignor and the assignee that the account debtor will not be notified of the assignment. Usually the borrower himself is entrusted with the collection of the accounts assigned by him. Secrecy is based on various business considerations including the feared loss of good will, prestige and credit standing.[2] But secrecy invariably entails certain risks. For example, in California and other jurisdictions following the minority or English rule of Dearle v. Hall,[3] one of the perennial dangers the assignee encounters is the threat of double assignments. However, because double assignments are a rarity, this hazard was long regarded as negligible.

That was the situation which prevailed in 1943 when the Supreme Court of the United States, decided Corn Exchange National Bank & Trust Co. v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189. There Section 60, sub. a, of the Chandler Act, 11 U.S.C.A. § 96, sub. a, was construed to mean that a transfer of property was not perfected as to the trustee in bankruptcy until such time when no creditor of or bona fide purchaser (a second assignee for value and without notice would qualify) from the debtor could thereafter have acquired any rights in the property transferred superior to those of the transferee. It should be noted that the mere *possibility* of acquisition of senior rights rendered the transfer voidable by the trustee.[4]

The effect of the Klauder decision was to add another substantial risk to the business of non-notification financing. The assignee stood in constant danger of losing his security to a trustee in bankruptcy. This situation was viewed with grave concern. Remedial measures were proposed and adopted in order to preserve and strengthen this popular security device. The state statutes took different forms.[5] California was one of

2. For a fuller discussion of this security device, see Koessler, Assignment of Accounts Receivable, 33 Cal.L.Rev. 40 (1945).

3. 3 Russ. 1, 48, 38 Eng.Rep. 475 (1828). The rule is that, as between successive good faith assignees for value of a chose in action, the first to notify the obligor prevails. California cases approving that rule include Wilson v. Heslep, 4 Cal. 300; Graham Paper Co. v. Pembroke, 124 Cal. 117, 56 P. 627, 44 L.R.A. 632; Smitton v. McCullough, 182 Cal. 530, 189 P. 686; City of Los Angeles v. Knapp, 7 Cal.2d 168, 60 P.2d 127. A list of other states adhering to this rule is compiled by Koessler, supra, note 3, 33 Cal.L.Rev. at p. 64.

4. Section 60, sub. a, of the Bankruptcy Act was amended in 1950 to remove the threat that an assignment might be vulnerable to a claim by a trustee in bankruptcy as a preferential transfer merely because a subsequent assignee could attack it. 64 Stat. 24, 11 U.S.C.A. § 96, sub. a. The effect of the 1950 amendment is to restore assignments to their pre-section 60, sub. a, status in respect to a claim by a trustee in bankruptcy. See House Report 1293, 81st Cong., 2nd Session, 1950 U.S.Code Congressional Service page 1985. Thus, but for legislation aimed at circumventing the Klauder decision, the trustee here would have no ground for asserting a claim. Furthermore, it is solely on this remedial legislation that the trustee is proceeding. Such a paradoxical eventuality was forecast in a Note, 25 So.Cal.L. Rev. 221, 224 (1952).

5. The three principal types of statutes enacted were validation, book-marking and recording statutes. A summary of state

three states which enacted a recording statute.[6] This comprehensive chapter, 766 of the California Statutes of 1943, page 2542, adding sections 3017–3029 to the Civil Code, "was designed to facilitate non-notification financing of accounts receivable by substituting the filing requirements of section 3019 for the former requirement that each customer-debtor be notified of the assignment." Durkin v. Durkin, 133 Cal.App.2d 283, 284 P.2d 185, 192.

The statutory scheme set forth a definition of an "account" (section 3017); and in section 3019 provided that:

"No assignment of an account shall be valid as against present or future creditors of the assignor without notice of such assignment or as against a subsequent purchaser or assignee of such account without notice of such assignment, unless such assignment shall be (recorded)."

Procedures were established for filing notice of the assignment with the county recorder.

■■■ We may take judicial notice that the Klauder decision furnished the impetus for this legislation.[7] The substance of the statute clearly indicates an intention to avoid the consequences of that decision. However, the statute went further than Klauder required. In so doing, it brought vast changes in the law of assignments. It modified the rule of priority as between successive bona fide assignees for value. Mere record notice now gave the first assignee indefeasible rights. Moreover, recordation was made the exclusive means of perfecting the assignment.[8] Actual notice to the obligor, which hitherto sufficed, was no longer enough. The statute also revised existing law as it related to creditors of the assignor. It placed such creditors in the same position vis-a-vis the first assignee as successor assignees in respect to priority of rights. This was more than Klauder compelled for it had long been the law in California that a non-notifying assignee was entitled to priority over creditors of the assignor.[9] Thus, the 1943 statute required the assignee to file the assignment to perfect his rights as against both subsequent assignees and creditors of the assignor. That is the setting which we find. We deal now with the interpretation of that statute.

We are faced initially by the question of the applicability of the statutory requirement of recordation to the instant factual context. Precisely, it must be ascertained whether or not the State's obligations were represented by an "account." A negative resolution of that question could be dispositive of this appeal because the recording statute would thence not apply and under the law of California governing assignments in general,[10] the assignee, as heretofore noted, had superior rights to any creditor and giving actual notice to the State perfected its rights as against subsequent assignees.

legislation in this area is contained in Koessler, supra, note 3, 33 Cal.L.Rev. at pp. 112–113.

6. The other states were Ohio and Missouri.

7. M. M. Landy, Inc. v. Nicholas, 5 Cir., 221 F.2d 923, 928; H. S. Mann Corp. v. Moody, 144 Cal.App.2d 310, 301 P.2d 28; Durkin v. Durkin, supra. The history of the California statute is examined also in Koessler, supra, note 3; 17 So. Cal.L.Rev. 303; and 38 Cal.L.Rev. 308.

8. See Note, 41 Cal.L.Rev. 333, 335; Comment, 17 So.Cal.L.Rev. 303 (1944). It cannot be doubted that where the statute is inapplicable, the general California rule still governs. See, e. g., 41 Cal.L. Rev. at 336.

9. Wheatley v. Strobe, 12 Cal. 92; Walling v. Miller & Co., 15 Cal. 38; Fenton v. Edwards, 126 Cal. 43, 58 P. 320, 46 L.R.A. 832; McIntyre v. Hauser, 131 Cal. 11, 63 P. 69; Southern Cal. Elec. Co. v. McDonald, 178 Cal. 386, 173 P. 760; In re Bennett's Estate, 13 Cal.2d 354, 90 P.2d 84, 126 A.L.R. 771.

10. See Notes 3 and 8, supra.

An "account" was defined in the 1943 statute as follows:

"(1) 'Account' means an open book account, mutual account, or account stated, due or to become due, carried in the regular course of business and not represented by a judgment, note, draft, acceptance, or other instrument for the payment of money; *it includes rights under an unperformed contract for work, goods or services which in the regular course will result in an open book account.*"[11] Cal.Civ.Code, § 3017.

If the instant transaction falls within the above definition at all, the briefs of both parties agree that it does so under the italicized proviso. No assertion is made that the assignment was not of "rights under an unperformed contract for work, goods or services." The only question is whether this indebtedness is such as "in the regular course will result in an open book account."

The term "open book account" is not defined in the statute. It is defined in 1 Ruling Case Law 207 as follows:

"The expression 'outstanding and open account' has a well-defined and well-understood meaning. In legal and commercial transactions it is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions, not reduced to writing, and subject to future settlement and adjustment. It is usually disclosed by the account books of the owner of the demand, and does not include express contracts or obligations which have been reduced in writing, such as bonds, bills of exchange, or promissory notes."

This definition is quoted with approval by the California cases not only in connection with the statute of limitations,[12] but also in regard to relative priorities of creditors under Civil Code Sections 3017–3019.[13] It is also the teaching of these cases that a requisite of an open book account is that it be treated as such by the transacting parties.[14] Although addressing itself to facts different from those in the instant case, the District Court of Appeal in the Durkin opinion also reaffirmed the general rule that: "An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account." 284 P.2d at page 190. The construction of the pertinent Civil Code sections, made by an appellate court of California, is binding upon this Court. Moore v. Illinois Central Ry. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Skaug v. Sheehy, 9 Cir., 157 F.2d 714. Accordingly, we must apply that construction of the term "open book account" to these facts.

The trial court found as a fact that the "bankrupt maintained a regular set of books, including account receivable ledger in which * * * were entered from time to time sums becoming due from the State of California for progress payments, and in which payments of such sums were also from time to time entered." It concluded that the bankrupt's accounts receivable ledger sheets "were the primary evidence of the current indebtedness of the State to the bankrupt." The court construed the words "open book account" to mean "an indebtedness primarily evidenced or reflected by debit and credit entries in an account book." It followed that the assigned account constituted an "account" under the trial court's test.

11. The definition was substantially altered by amendment in 1953. The amended definition specifically excludes any debt arising under a contract for a public work of improvement. Accordingly the instant indebtedness would not constitute an account under the present definition. An analysis of the 1953 amendment appears in a Comment in 27 So.Cal. L.Rev. 75–76 (1953).

12. Parker v. Shell Oil Co., 29 Cal.2d 503, 175 P.2d 838.

13. See California cases gathered in Durkin v. Durkin, supra, 284 P.2d at page 190.

14. Durkin v. Durkin, supra.

■ We cannot agree with that determination. The record discloses no evidence that *both* the bankrupt and the State treated the accounts book as an "open book account." Thus, the conclusion that the assigned account was represented by an "open book account" in the sense of that phrase as it has been interpreted by the California courts, cannot stand. Therefore, we hold that there was no open book account to come within the statute, and no necessity to file notice of the assignment.

■ There is yet another ground for our decision. Preliminarily, it should be observed that we are not impressed by appellant's argument that the assigned right comes within the exclusionary phrase of Civil Code, § 3017, to-wit, an "account" should not be represented by "a judgment, note, draft, acceptance, or other instrument for the payment of money." Properly construed under the sound doctrine of ejusdem generis, the general exception refers to legal instruments of the same character as those specifically enumerated.[15] A contract does not qualify. Nor do we find persuasive appellee's assertion that the payments were not made under the assignment, but were received directly from the bankrupt. One payment, dated January 6, 1949, in the amount of $3,785.76, was made directly to appellee. The other six were deposited to the bankrupt's "special Account" at the Bank of America and then transferred by various means to the Bank. At all times, as the trial court found, the Bank had control of all payments made by the State. And the money it received was paid under the assigned contract.

■ We are of the opinion that the failure to record the assignment, even if required, would not authorize the recovery by the trustee in bankruptcy of moneys paid thereunder more than four months prior to the filing of the petition. The primary purpose of the statute was to protect the assignee against a claim by the trustee while at the same time maintaining the practice of non-notification financing.[16] Other objectives were secondary and incidental.[17] It would be strange indeed if such a statute, enacted to benefit the assignee were to be used to deprive the assignee of rights it would have had if the statute had not been passed,[18] or if there had been no assignment and the debt simply paid from the payments on the contract.

■ There is nothing in the language of the statute or its legislative history which compels us to stretch the recording statute to encompass collected obligations as well as outstanding accounts. The statute is concerned expressly only with the assigned right or rights. It is silent in respect to the *proceeds* enuring under that right. Appellant urges that a refusal to extend the coverage of the statute to payments would afford assignees an easy means

15. In re Richards, D.C., 108 F.Supp. 259, is cited for the converse proposition. The Richards decision has not been the recipient of favorable comment. See, e. g., M. M. Landy Inc., v. Nicholas, 5 Cir., 221 F.2d 923, 41 Cal.L.Rev. 333 (1953). Its effect would be to exclude from the statute a great many transactions which would otherwise qualify for inclusion. We think it unreasonable to ascribe to the California Legislature an intention to pass a comprehensive statute and then delimit it severely by an indefinite exclusionary phrase.

16. H. S. Mann Corp. v. Moody, supra; Durkin v. Durkin, supra.

17. Menick v. Carson, supra, states that the aim of the statute was to protect creditors against secret liens. Therefore, it read Civil Code Section in pari materia with Civil Code, §§ 2957 and 3440. The subsequent opinion in Smith v. Harris, 127 Cal.App.2d 311, 273 P.2d 835, casts doubt on this interpretation of the statute. Protection against secret liens may be taken to have been one of the legislative purposes of this legislation, but it certainly was not the dominant and impelling one.

18. As previously mentioned, the 1950 amendment to the Bankruptcy Act obviated the necessity for this legislation. And even under the Klauder decision, the appellee would prevail for it had given notice to the obligor.

of avoiding the statutory filing requirement. While it is not at all certain that assignees would be willing, in order to avoid recording, to assume the risk that payments under the assignments will precede bankruptcy by more than four months, it does not appear to us to be a calamitous prospect to allow the assignee to retain the moneys paid to him well before the petition in bankruptcy is filed. We cannot look with favor upon the prospect of employing the statute in a manner contrary to its basic purpose and objective.

Affirmed.