**MIAMI NATIONAL BANK, Appellant,**

v.

**Nelse S. KNUDSEN, Trustee for Ludman Corporation, Bankrupt, Appellee.**

**No. 19009.**

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1962.

Howard R. Hirsch, Miami, Fla., for appellant.

Harold Friedman, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and JONES, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

We are asked to construe the Florida Assignment of Accounts Receivable Act. In Florida, as in most states, the legislature has adopted a statute designed to protect non-notification accounts receivable financing. The statute in question, Chapter 524, Florida Statutes, 1957, F.S. A.,[1] provides that an assignee may perfect his assignment of accounts receivable by filing a notice of the assignment with the Secretary of State of Florida. The law is silent on the point at issue: is notice-filing under Chapter 524 mandatory and now the exclusive method in Florida for perfection of an assignment of accounts receivable? Or is it optional, an alternative method to perfection of an assignment by actual notice to the account debtors? We hold that the statute establishes a mandatory, exclusive system of perfecting assignments of accounts receivable, and affirm the judgment below for the trustee.

### I.

The facts are undisputed. September 18, 1958, an involuntary petition for corporate reorganization under Chapter X of the Bankruptcy Act was filed against the Ludman Corporation. Within four months prior to that date the corporation had assigned for consideration certain accounts receivable to the Miami National Bank. The bank did not file any notice of the assignment in accordance with Chapter 524 of the Florida Statutes, F. S.A. It had, however, notified the account debtors of the assignment, and had collected $7,294 from them, an amount it is still holding. The trustee in bankruptcy seeks to recover these funds.

A trustee derives his rights to recover funds for a bankrupt's estate from Section 60 of the Bankruptcy Act, 11 U.S. C.A. § 96. Section 60, sub. a(1) describes a "preference" as a transfer "of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by

1. Laws 1947, c. 24297, as amended Laws 1957, c. 57–22.

or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." Section 60, sub. a(2) states that "a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." Section 60, sub. b enables the trustee in bankruptcy to recover the property transferred as a preference if the transferee had reasonable cause to believe the transferor was insolvent at the time of the transfer.

Federal law determines these rules. State law determines when the transfer becomes perfected. Here, Florida law is decisive: if the assignment was not perfected through notification, the transfer must be considered as having been made not at the time of the assignment but at the later date when the Miami National Bank actually collected the money from the account debtors; a transfer at the later date would be "made on account of an antecedent debt" and subject to the preference provisions of the Bankruptcy Act.

Although, historically, simple contract rights or choses in action were not assignable at common law, assignments of accounts have been recognized in Florida and other states for many years. Walters v. Whitlock, 9 Fla. 86, 104 (1860); Sammis v. L'Engle, 19 Fla. 800 (1883); Richardson v. Holman, 160 Fla. 65, 33 So.2d 641 (1948). Accordingly, before enactment of Chapter 524 in 1947, notice to the account debtors of an assignment of accounts receivable would have given the assignee protection against the assignor's creditors and a perfected priority to the account debt that would have barred the trustee's claim in this case.

The Florida Accounts Receivable Act, Section 524.02, provides that "an assignee may become a filing assignee by filing in the office of the secretary of state * * * [a prescribed] form of notice of assignment." Section 524.04 reads:

"(1) A written assignment for value, signed by the assignor, becomes protected at the time the assignee:

"(a) Files a notice of assignment after taking an assignment or

"(b) Takes an assignment during the effective period of the notice.

"(2) A protected assignee takes subject to:

"(a) Judicial liens on the account at the time his assignment became protected;

"(b) An assignment to another person which was protected before his assignment, except that an assignee takes priority over another assignee who files later than he did, regardless of the relative dates of their assignments.

"Notwithstanding the provisions of subsection (2) (b), a protected assignee takes subject to:

"1. An assignment, prior in time to his, of which he had written notice at the time he took his assignment, and,

"2. Any written contract made by him as to priorities.

"(3) Subject to subsection (2), above, regardless of notice to the debtor a protected assignee has rights to the account and to the proceeds thereof in any form superior to the rights of the assignor and his creditors and assignees from him and may recover the proceeds from any such person in possession of them.

"(4) A protected assignment remains protected while a notice of assignment, a renewal thereof, or an affidavit of continuance is effective."

## II.

Non-notification became an accepted practice in accounts receivable financing because borrowers, and sometimes lenders, were reluctant to have the account

debtors notified of an assignment.[2] If a non-notifying assignee could rely on the assignor's honesty, usually he would be in as strong a position as if he had notified the account debtors, because in most states the assignee has a priority over general creditors. See 4 Am.Jur., Assignments, §§ 112, 113. The assignee could be harmed by his failure to notify the account debtors, if the assignor engaged in double financing by assigning the same accounts to a second assignee. State laws differed as to the consequences in such a case. Under the so-called "English" or "notification" rule, the first assignee to notify the debtor acquired the priority.[3] The "American" or "validation" rule gave priority to the first assignee, irrespective of whether the second notified the debtor first, but jurisdictions split as to the manner in which they applied the rule.[4] New York gave the first assignee a priority over the second in all cases, and if the second assignee collected the debt the first as-

signee could recover it from him.[5] The Massachusetts rule, which the Restatement of Contracts, Section 173, adopts, permitted the second assignee to retain a payment received in good faith.[6]

Before the Chandler Act of 1938, an assignment of accounts, otherwise valid, did not amount to a preference because no notice was given to the debtors. This was the rule even as to an assignment within the four-month period. The Chandler Act nullified this rule by amending the law to give the trustee in bankruptcy power to recover property transferred from the bankrupt if a bona fide purchaser from the bankrupt could acquire an interest in the property.[7] The Act led to two important decisions. In Corn Exchange National Bank & Trust Co. v. Klauder, 1943, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, the trustee attempted to recover accounts receivable assigned by the bankrupt within the four months before bankruptcy.

2. "It is interesting to consider in this connection the several explanations which have been offered for the fact that, apart from the different conditions in the lines serviced by factors, even honest borrowers pledging their receivables do not like this to be disclosed to their customers. It would seem that only two of those alleged motives are substantially responsible for the described attitude of the borrowers. In the first place there appears to be a genuine apprehension among those concerned that their prestige and consequently their 'good-will' might be affected by any publicity given to the fact of their resorting to this method of credit accommodation. 'Cashing sales', as it is sometimes called, is still deprecated in some quarters, though probably only in conservative remembrance of a period where this appraisal might have had some justification. Equally strong and determinative for the attitude of the borrower, seems to be the feeling that the interference of a third element, in the form of the assignee, with the originally bipartite relation and the resulting possibility of inconvenience for the customer might impair the borrower's potential business expansion, especially if sales talk on behalf of competitors calls attention to the vulnerable point." Koessler, Assignment of Accounts Receivable, 33 Cal. L.Rev. (1945).

3. Deale v. Hall, 1830, 3 Russ. 1, 38 Eng. Reprint 475.

4. Employers' Cas. Co. v. Rockwall County, 1931, 120 Tex. 441, 35 S.W.2d 690 (1931).

5. Superior Brassiere Co. v. Zimetbaum, 1925, 214 App.Div. 525, 212 N.Y.S. 473.

6. Rabinowitz v. People's National Bank, 1920, 235 Mass. 102, 126 N.E. 289.

7. The statute provided, "a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy or of the original petition under chapter 10, 11, 12, or 13 of this title, it shall be deemed to have been made immediately before bankruptcy." This provision was amended in 1950 to limit the rights of the trustee in bankruptcy to those of a creditor. 52 Stat. 869 (1938) 11 U.S.C.A. § 96.

The assignee had not perfected the assignment by notification to the debtors and under the applicable Pennsylvania law, which followed the English rule, a bona fide purchaser of the accounts could acquire an interest by notifying the debtors. The Supreme Court held that the trustee could recover the proceeds of the accounts as a voidable preference—unless, under state law, an assignment was "so far perfected that no bona-fide purchaser from the debtor" could prevail. The Court observed that "so long as the transaction is left open to possible intervening rights * * * it is vulnerable to the intervening bankruptcy". 318 U. S. at 437, 63 S.Ct. at 681. Shortly thereafter a federal district court, applying the Klauder rationale in a jurisdiction following the Massachusetts rule, went a step farther and held that since a bona fide purchaser of the accounts could obtain an interest in them by collection, the assignment without notification could not prevent recovery of the account debts by the trustee. In re Vardaman Shoe Co., D.C.Mo., 1943, 52 F.Supp. 562.

These decisions resulted in a widespread, organized movement to shelter non-notification financing through protective state laws. The new statutes fall into three categories.[8] Some adopt the New York "validation" rule, that the assignment is perfected when made and valid as against all creditors and subsequent assignees. Others, patterned after the Uniform Trust Receipts Act, provide for perfection upon filing a notice with the Secretary of State that the assignor has assigned or intends to assign certain accounts receivable. And, two or three states follow a third approach of providing perfection when the assignee marks the assignment on the assignor's books. Florida took the second approach in its Accounts Receivable Act.

The analogous Alabama[9] and California[10] statutes, in terms, prescribe filing (recordation) as the only way in which an assignment may be perfected, as against a trustee or second assignee. On the other hand, the analogous Missouri[11] and North Carolina[12] statutes, in terms, allow filing as an optional method to notification of account debtors. Most recording statutes, however, like the Florida law, have no express provision making filing either optional or mandatory. Almost all of the legal writers on the subject of accounts receivable financing— there are many—take it for granted that, in the absence of an express provision making filing optional, filing is mandatory for the perfection of assignments;[13] the few who raise the question do so

8. See Koessler, Assignment of Accounts Receivable, 33 Cal.L.Rev. 40 (1945).

9. Ala.Acts, 1949, No. 338, § 7.

10. Cal.Civ.Code, § 3029.

11. Mo.Rev.Stat.Ann. § 3347.2, V.A.M.S. § 410.020.

12. N.C.Gen.Stat. § 44–80(1) (c).

13. Treister, Effect of Failure to Record Notice of Assignment of Accounts Receivable, 33 Los Angeles Bar Bulletins 179 (1958); Kupfer, Accounts Receivable Financing, 62 Com.L.J. 331 (1957); Craig, Accounts Receivable Financing: A Reappraisal of Validation Statutes in the Light of Amended 60(a), 65 Harv.L.Rev. 627 (1952); Conwill and Ellis, Much Ado About Nothing: The Real Effect of Amended 60(a) on Accounts Receivable Financing, 64 Harv.L.Rev. 62 (1950); Koessler, New Legislation Affecting Non-Notification Financing of Accounts Receivable, 44 Mich.L.Rev. 563 (1946); Koessler, Assignment of Accounts Receivable, 33 Cal.L.Rev. 40 (1945); Note, 57 Yale L.J. 828 (1948). See also Denonn, Secured Transactions (Practicing Law Inst. of N. Y. 1946); Braucher and Sutherland, Commercial Transactions, 166 (1948).

See Kindred, Assignment of Accounts Receivable, 14 Fla.L.Rev. 66 (1961); Friedman (Counsel for Trustee in the instant case), Secured Creditors in Bankruptcy, 10 Fla.L.Rev. 472, 480 (1957) and Horwich, Security Interests—Commercial Finance Companies in Florida, 7 Miami L.Q. 535 (1953). These Florida legal writers assume that filing is mandatory. Friedman, however, is counsel for the trustee in the instant case.

sketchily and without much doubt that filing is mandatory.[14]

## III.

The appellant contends that Chapter 524 should not be construed to nullify by implication the common law rule governing perfection of assignments by actual notice. Statutes in derogation of the common law must be strictly construed: "Statutes are not to be deemed to change a common law rule by implication, unless the intention to do so is obvious; the rules of the common law are not to be changed by doubtful implication." 50 Am.Jur. § 346, pp. 340-342. This canon of statutory construction is more sinned against than sinning. It has of course a certain usefulness as a general proposition. It is an influence toward continuity in the law. It has importance when a statute must be interpreted within the common law frame of reference. It fits in with the judicial disinclination to find an implied repeal of any kind of law. It has considerable force in the interpretation of penal statutes or punitive provision of statutes. But the canon has never been accepted uncritically, and it cannot be applied in disregard of the sense of a statute. It has very little force in the interpretation of remedial or curative legislation, a category in which Chapter 524 falls. It is inapplicable to a statute purporting to revise all of the law on a special subject; Chapter 524 establishes a self-contained, apparently all-inclusive system for perfecting assignments of accounts receivable. Time and the expansion of the *lex scripta* at the expense of the *lex non scripta* have greatly reduced the vitality of the canon. Whatever vitality the canon has today depends on the extent to which its application to a particular statute can be said to be consistent with the legislative purpose and the sense of the statute. Assignments of accounts came late in legal history and then primarily through equity and legislation, not through traditional common law. Fifty or sixty years ago accounts receivable financing was virtually unknown in this country. Now, it is estimated, the financing amounts to an annual volume of ten billion dollars.[15] Hand-tailored legislation fits business as big and new as this. An over-simplified generalization, therefore, even if it carries the dignity of an ancient canon of construction, is far less important here in determining the reach and grasp of the statute than consideration of the legislative purposes and the express and implied means necessary to accomplish the purposes.

The broad legislative purpose here is to protect accounts receivable financing. Accounts receivable lenders, as a class, have no reason to feel aggrieved by Chapter 524: the burden of filing a single notice with the secretary of state is considerably lighter than the burden of giving actual notice to account debtors. The narrow legislative purpose is to protect the modern, practical method of *non-notification* financing, which for most commercial banks and finance companies has replaced what the appellants call the "common law" system of perfection by actual notice to the debtors.[16] If the Florida legislature had intended only to validate non-notification assignments,

14. Conwill and Ellis, Much Ado About Nothing: The Real Effect of Amended 60(a) On Accounts Receivable Financing, 64 Harv.L.Rev. 62, 74 (1950); Koessler, Assignment of Accounts Receivable, 33 Cal.L.Rev. 40, 80, 81, 97 (1945); Koessler, New Legislation Affecting Non-Notification Financing of Accounts Receivable, 44 Mich.L.Rev. 563, 601 (1946); Kupfer, Accounts Receivable, Financing, 62 Com.L.J. 331 (1957).

15. Kupfer, Accounts Receivable Financing, 62 Com.L.J. 331 (1957).

16. "Apart from the 'Fourth Avenue Houses,' as the factoring firms are sometimes popularly called, two important professional groups are on a large scale engaged in financing of accounts receivable: finance companies and commercial banks. Subject to negligible exceptions, both of these groups are operating on a non-notification basis, that is, with the mutual understanding, between assignor and assignee, that save extra-ordinary contingencies as, e. g., the assignor's insolvency, the assigned debtor will not be notified of the assignment." Koessler,

without affecting existing law, the logical statute for Florida to have adopted would have been a validation statute. This would have performed the validation function equally well, without the cost that a recording system entails. Effect must be given to the legislature's selection of a recording statute. The obvious purpose of recording statutes is to provide publicity for the recorded instrument. Thus, it has been pointed out: "The American Bankers Association, together with most credit men, opposed [the validation] type of legislation, their opposition being centered upon the lack of publicity inherent in non-notification financing and the attendant fostering of secret liens * * * [Notice-filing] statutes * * * in general follow the American Bankers Association theory that some form of publicity should be given where one is participating in accounts receivable financing." [17]

We find no sound reason for treating Chapter 524 as different from other recording statutes.[18] On the contrary, the sense of the situation suggests that statutory purpose would be largely defeated if filing were not the exclusive method for perfection of assignments. If perfection of assignments could still be accomplished by notification of account debtors, an interested person seeking information as to assigned accounts could not rely upon the fact that no notice was on file as to a particular assignor, since it would be entirely possible that a previous assignee had chosen the optional method of actual notice. For safety, therefore, a prospective assignee would be required not only to check for a recorded notice of assignment but also to make inquiry of all the account debtors whose debts he planned to receive on assignment. "Regardless of any merits which notification of the debtor may have it is surely not fit to accomplish that leading object of recording acts which consists in providing 'evidence of title accessible to all upon which one may rely in making a purchase when he has no knowledge of anything to put him on inquiry'." [19] The tentative majority report of the Special Committee of the National Conference of Commissioners on Uniform State Laws, although it favored a validation rather than a recording statute, considered the requirement of actual notification of debtors as "outmoded and ineffective", for obviously "in the modern day, notice to one who owes an original account will in no way give notice to any other person, certainly not to a creditor, a purchaser, or a subsequent assignee." [20] In short, continued recognition of the so-called common law rule of perfection by actual notice to account debtors would frustrate the purpose of the enactment of

Assignment of Accounts Receivable, 33 Cal.L.Rev. 40, 56.

17. Conwill and Ellis, Much Ado About Nothing: The Real Effect of Amended 60(a) on Accounts Receivable Financing, 4 Harv.L.Rev. 62, 71 (1950).

18. The Uniform Commercial Code adopts notice-filing for perfection of assignments of accounts. The Reporter's comments on Section 9—302, in part, state: "Over forty jurisdictions have enacted accounts receivable statutes. About half of these statutes require filing to protect or perfect assignments [The Reporter assumes that filing is mandatory]; of the remainder, one is a so-called 'book-marking' statute and the others validate assignments without filing. This Article adopts the filing requirement, on the theory that there is no valid reason why public notice is less appropriate for assignments of accounts and contract rights than for any other type of non-possessory interest. Section 9—305, furthermore, excludes accounts and contract rights from the types of collateral which may be the subject of a possessory security interest: filing is thus the only means of perfection contemplated by this Article."

19. Koessler, Assignment of Accounts Receivable, 33 Cal.L.Rev. 40, 88 (1945), citing Ballentine, Purchase for Value and Estoppel, 6 Minn.L.Rev. 87, 91 (1922).

20. National Conference of Commissioners on Uniform State Laws, 54th Annual Conference, Report of the Special Committee on Uniform Act on Assignment of Accounts Receivable (1944).

a recording-type statute to facilitate accounts receivable financing by providing a quick and safe method to check the "title" of the accounts to be assigned.

Although we have found no case directly in point,[21] there are two decisions of this Court which lend support to the views we express in the instant case. In M. M. Landy Inc. v. Nicholas, 5 Cir., 1955, 221 F.2d 923, this Court held Chapter 524 inapplicable to warrants of the United States government delivered as security. In the course of our opinion we discussed the purpose and effect of the law. We pointed out:

"Likewise, the appellant's contention that the Florida statute was not intended to protect creditors from secret, unrecorded assignments of accounts receivable, citing Wells v. Place, D.C.N.D.Ohio, 92 F.Supp. 473, is rationally untenable in the light of the words of § 524.04(2):

" 'A protected assignee takes subject to: (a) Judicial liens on the account at the time his assignment became protected; (b) An assignment to another person which was protected before his assignment, except that an assignee takes priority over another assignee who files later

than he did, regardless of the relative dates of their assignments.'

" * * * The effect of the language used by the legislature is to give the trustee in bankruptcy a better right than an unrecorded assignee of accounts receivable (as the statute defines them); and whether that was a primary motive of the legislature or not, such was clearly the Congressional intent in § 60, sub. a. Wells v. Place, supra, is not in point, because the Ohio statute involved there, Ohio Gen.Code § 8509–3, since amended, referred only to subsequent assignees and made no mention of creditors' rights, as the Florida statute does. The Florida statute is clear that an assignee's failure to record would enable an actual creditor of the assignor to establish superior rights by garnishing the account, and that is the critical test adopted in the Bankruptcy Act."

In Ribaudo v. Citizens National Bank of Orlando, 5 Cir., 1958, 261 F.2d 929, 937, this Court considered a statute of Texas almost identical with the Florida law except that, as the Court stated: "The Florida statute [Chapter 524] in terms more affirmative and positive than

---

21. Both parties consider Costello v. Bank of America Nat. Trust & Savings Association, 9 Cir., 1957, 246 F.2d 807, dispositive of this appeal, but arrive at opposite conclusions as to the meaning and effect of the decision. We regard the case distinguishable on two grounds. (1) In Costello the court held that an assignee's failure to file the requisite notice gave rights to a creditor only so long as the accounts remained uncollected, even though the creditor's claim arose before the collection. But the case involved amounts collected *before* the four month period preceding the bankruptcy, and the decision indicates that the trustee, under Section 60 of the Act, could reach the amounts collected within four months preceding the bankruptcy. (2) The California statute, unlike the Florida statute, expressly makes notice-filing mandatory.

The opinion points out that the statute goes beyond the purpose of off-setting

Klauder in that it creates rights in creditors of the assignors which they did not have before passage of the law. The court felt justified therefore in limiting the protection afforded creditors, consistently with the primary statutory purposes of legitimizing non-notification financing by protecting the assignee from the assignors' creditors, as represented by the trustee in bankruptcy. The court said: "The primary purpose of the statute was to protect the assignee against a claim by the trustee while at the same time maintaining the practice of non-notification financing. Other objectives were secondary and incidental. It would be strange indeed if such a statute, enacted to benefit the assignee were to be used to deprive the assignee of rights it would have had if the statute had not been passed, or if there had been no assignment and the debt simply paid from the payments on the contract."

the Texas Act prescribes the nature necessary to be taken to secure it." We observed that "the purpose of such an act [is] to establish a workable and relatively simple mechanism for non-notification financing."

Considering the background of the Florida Accounts Receivable Act, the legislative purpose, and the sense of the statute, we hold that Chapter 524 is a mandatory recording law. The Miami National Bank's failure to file the requisite notice with the Secretary of State of Florida prevented perfection of the assignment.

The judgment of the district court in favor of the Trustee is therefore

Affirmed.

JONES, Circuit Judge (dissenting).

I cannot join in the decision of the Court that Florida Statutes, Ch. 524, establishes a mandatory exclusive system of perfecting assignments of accounts receivable. The majority is critical of the method adopted by the Florida Legislature unless it was intended to abolish the common law rule protecting an assignee who had given notice to the assignor's debtor. I see no basis for this conclusion and suggest that the Florida Legislature could adopt the means it desired to accomplish the purpose of perfecting and protecting the lien of an assignee who had not given notice of the assignment to the assignor's debtor. Neither the Landy case nor the Ribaudo case requires the decision which the majority reaches. It may be that under the statute an assignee who had filed would have some rights which an assignee who had given notice would not have had prior to the statute. Here, however, the assignee had given notice and its assignment would have been valid as against the trustee in bankruptcy in the absence of the statute, and, it seems, this is the view of the majority.

California has a statute similar in substance and enacted for the same purpose as the Florida act. In an opinion construing the California statute, and citing the Landy case, the Court of Appeals for the Ninth Circuit said:

"The primary purpose of the statute was to protect the assignee against a claim by the trustee while at the same time maintaining the practice of non-notification financing. Other objectives were secondary and incidental. It would be strange indeed if such a statute, enacted to benefit the assignee were to be used to deprive the assignee of rights it would have had if the statute had not been passed * * *." Costello v. Bank of America National Trust & Savings Association, 9th Cir. 1957, 246 F.2d 807, 813.

The language quoted may, in a sense, be dictum but, I submit, it is sound and logical, and the principle announced should be followed here. The case was cited by this Court in the Ribaudo case.