**UNITED STATES of America, Appellant,**

v.

**The VALLEY NATIONAL BANK, Executor of the Estate of Maurice H. Berkson, Deceased, et al., Appellees.**

No. 74–1313.

United States Court of Appeals, Ninth Circuit.

Aug. 22, 1975.

Dennis M. Donohue (argued), Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Merle M. Allen, Jr. and Harry M. Beggs (argued), Phoenix, Ariz., for appellees.

OPINION

Before BARNES, WRIGHT and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

The United States appeals from a judgment in favor of two banks in a contest among creditors claiming interests in broker's commissions earned by a taxpayer during his lifetime and assigned to a bank. We affirm.

The commissions at the time of trial had a value of $83,702.87. The taxpayer's estate is insolvent. The government bases its claim of first priority on two income-tax assessments for the year 1966. The first assessment, dated October 27, 1967, was for $25,980.64 plus interest. The notice of a tax lien for this assessment was filed on February 29, 1968. The second assessment, dated June 14, 1968 was for $15,211.69 plus interest. The second notice was filed December 30, 1970.

On February 22, 1966, approximately two years before the first notice of tax lien was filed, the taxpayer assigned the so-called "Tucson" commission to the predecessor in interest of appellee Great Western Bank & Trust as security for all the taxpayer's existing and future indebtedness. On January 30, 1967, approximately one year before the first notice of tax lien was filed, the taxpayer assigned the so-called "Phoenix" commission to Great Western's predecessor as security for all the taxpayer's existing and future indebtedness. These assignments were not recorded.

On August 29, 1967, appellee Ernest C. Herman obtained a judgment against the taxpayer for $5,000 plus interest and costs. Approximately four months before the first notice of tax lien was filed, Herman obtained a garnishment judgment against Great Western's predecessor.

On April 14, 1967, the predecessor in interest of appellee United Bank obtained a judgment against the taxpayer for $15,000 plus interest, costs, and attorney's fees. Like Herman, United Bank's predecessor caused a writ of garnishment to be issued against Great Western's predecessor in interest with respect to the "Phoenix" commission. In like manner, approximately four months before the first notice of tax lien was filed, United Bank's predecessor obtained a garnishment judgment against Great Western's predecessor for sums received by Great Western's predecessor in excess of sums owed it by the taxpayer.

The rights of all parties here except the United States, the State of Arizona, and the disinterested stakeholder of the "Tucson" commission were determined by a judgment of the Maricopa County Superior Court in June 1971. That judgment is *res judicata* and binds the parties to the state-court action. Thus, we are concerned only with the rights of the United States, the sole appellant, in the distribution scheme.

The United States urges that it should be prior to Great Western because the assignment to Great Western was either a mortgage or an assignment of an account receivable, and was not recorded.

The potential relevance of recordation lies in § 6323(a) of the Internal Revenue Code, which provides that a tax lien shall not be valid against a holder of a "security interest" until notice of lien is filed.

Here the notices of lien were filed February 29, 1968, and December 30, 1970, after the assignment of the "Tucson" commission. But the government urges that it nonetheless enjoys first priority because the assignment had not created a "security interest".

"Security interest" is defined by 26 U.S.C. § 6323(h)(1) as "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time * * * if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation * * *."

The government argues that the unrecorded assignment did not give Great Western an interest protected against a subsequent judgment lien creditor.

Great Western's principal responses are:

(1) The United States did not make the mortgage argument below and should not be allowed to tender it for the first time on appeal.

(2) The assignment was not of an "account receivable" within the meaning of Arizona law.

(3) Because the Uniform Commercial Code was enacted in Arizona before the government filed its notice of lien, the U.C.C. should govern. Under the U.C.C. no recording is required to perfect Great Western's interest in the commission because (a) under Ariz.Rev.Stat. § 44–3104(4) [§ 9–104(d) of the U.C.C.] the Article 9 filing requirements do not apply to a "transfer of a claim for wages, salary or other compensation of an employee"; or (b) under Ariz.Rev.Stat. § 44–3123(A)(5) [§ 9–302(1)(e) of the U.C.C.] filing is not required to perfect a security interest obtained through "[a]n assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor".

■ The district court and the parties agree that the commissions "existed" within the meaning of Int.Rev.Code § 6323(h)(1). This fact invokes Arizona law in the definition of "security interest". We accord the district judge's interpretation of Arizona law substantial deference. See Gilham v. Burlington Northern, Inc., 514 F.2d 660 (9th Cir. 1975).

■ The district judge did not reach the issue whether enactment of the U.C.C. "cured" any defect in Great Western's security interest because he held that Great Western held a vested interest under pre-Code law. Ariz.Rev. Stat. § 44–3201. We believe that he was right.

While recordation was mandatory in order to preserve the priority of assignments of accounts or accounts receivable under pre-U.C.C. law, the assignments here were not of accounts or accounts receivable. See Valley National Bank of Arizona v. Byrne, 101 Ariz. 363, 419 P.2d 720 (1966). In Byrne, the Supreme Court of Arizona held that an assignment of the proceeds of a contract for plumbing work on 50 homes was valid as against a subsequent creditor. The court did not discuss the issue of recordation, apparently because the parties did not raise it. While the precedential value of the case on the recordation issue is not overwhelming (cf. United States v. Tucker Truck Lines, 344 U.S. 33, 37–38, 73 S.Ct. 67, 97 L.Ed. 54 (1954); Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925)), the holding is stated in unequivocal terms: "Once a valid assignment of the proceeds had been made, the Bank acquired a vested interest in them, as soon as they became due including all the right, title, and interest in the proceeds * * *." 419 P.2d at 722.

The government is correct in arguing that the district court's reliance on our Costello v. Bank America National Trust & Savings Ass'n, 246 F.2d 807 (9th Cir. 1957), is misplaced. That case turned on a peculiarity in the California state law definition of one category of "accounts". See 246 F.2d at 812–13. It is thus not binding in cases involving Arizona law. But in light of other indications that the district court correctly followed Arizona law, this point is inconsequential.

■ Because the government's afterthought about the assignments being mortgages was never addressed to the trial court, we will not pursue it.

We express no opinion upon the Arizona interpretation of the Uniform Commercial Code as it may apply to assignments of wage claims. If the Arizona court has construed and applied the provisions of § 9–104 of the U.C.C., the case has not been called to our attention. We do not decide whether the inter vivos assignments here in question were of a significant part of the outstanding accounts or contract rights of the assignor at the time they were made, because that point does not appear to have been

deemed important as the case was presented below, and the trial court made no finding upon it.

The decision of the trial court that a valid security interest had been perfected under Arizona law at the time of the assignments was free from error.

The garnishment judgment also gave United Bank and Herman priority over the United States.

Affirmed.