176 So.2d 94 (1965)
BOULEVARD NATIONAL BANK OF MIAMI, a national banking corporation, Petitioner,
v.
AIR METAL INDUSTRIES, INC., a Florida corporation, Rosalie A. Fink, Morris Sobel, and Tompkins-Beckwith, Inc., a Florida corporation, Respondents.
No. 34158.
Supreme Court of Florida.
June 9, 1965.
*95 Joseph M. Fitzgerald and Thomas A. Horkan, Jr., Miami, for petitioner.
Moore & Moore and R. Earl Welbaum, Miami, for respondents.
WILLIS, Circuit Judge.
The petitioner bank was plaintiff in the trial court where it sustained an adverse summary judgment, and was appellant in the District Court of Appeal, Third District, which affirmed. Case No. 64-448, opinion filed Feb. 2, 1965. The District Court of Appeal has certified to this Court, pursuant to Art. V, Sec. 4(2), Constitution of Florida, F.S.A., that its decision in this case "`passes upon a question  of great public interest' because it affects the rights of many members of the public in an important field of the commercial law of this State".
The issuance of this certificate serves to give this court jurisdiction to review the decision.[1] Accordingly, we have granted certiorari.
The facts involved are not in material dispute and both contending parties moved for summary judgment in the trial court. The suit commenced as an action at law by the plaintiff bank against several defendants, including the respondent Tompkins-Beckwith, Inc., in whose favor the summary final judgment involved here was rendered.
Tompkins-Beckwith was the contractor on a construction project which had entered into a subcontract with a division of Air Metal Industries, Inc. Air Metal procured American Fire and Casualty Company to be surety on certain bonds in connection with contracts it was performing for Tompkins-Beckwith and others. As security for such bonds, Air Metal executed, on January 3, 1962, a "Contractor's General Agreement of Indemnity" which contains an assignment to American Fire of "all monthly, final or other estimates and retained percentages; pertaining to or arising out of or in connection with any contracts performed or being performed or to be performed, such assignment to be in full force and effect as of the *96 date hereof, in the event of default in the performance of  any contract as to which the surety has issued, or shall issue, any [surety bonds or undertakings]".
On November 26, 1962, the petitioner bank lent money to Air Metal and to secure the loans Air Metal purported to assign to the bank certain accounts receivable it had with Tompkins-Beckwith which arose out of subcontracts being done for that contractor.
In June, 1963 Air Metal defaulted on various contracts bonded by American Fire. On July 1, 1963 American Fire served formal notice on Tompkins-Beckwith of Air Metal's assignment. Tompkins-Beckwith acknowledged the assignment and agreed to pay. On August 12, 1963, the petitioner bank notified Tompkins-Beckwith of its assignment and claim thereunder. The claim was not recognized and on September 26, 1963, this action was filed in the trial court. On October 9, 1963 Tompkins-Beckwith paid all remaining funds which had accrued to Air Metal to American Fire.
The trial judge concluded that the proper rule to be applied is that as between assignees of accounts receivable the assignee who first gives notice of his claim to the debtor is preferred and has prior rights. Summary judgment in favor of Tompkins-Beckwith was thus based on the notice given by American Fire to Tompkins-Beckwith on July 1, 1963 which was held to render that claim superior to that of the bank which did not give notice until August 12, 1963.
The District Court of Appeal affirmed, approving the rule adopted by the trial court, referred to as the "English rule", in preference to that urged by the appellant bank and called the "American rule". The latter rule may be stated as holding that as between assignees of the same accounts receivable and in the absence of facts giving rise to an estoppel, the earlier assignment has priority, even without notice to the debtor.
The District Court of Appeal stated that it was "not aware of any appellate court decision in the State of Florida adopting [the rule applied by the trial court]". Since this is a case of first impression, the court deemed it a proper one for certification as passing on a question of great public interest.
It based its affirmance partly upon the announcement of such rule in a Florida case[2] decided by a federal court of appeals. Also it found that the existence of the English rule is historically sustainable, and that "its application is justified from the fact that the legislature of this State has seen fit to make use, although of a different nature, of notice as a basis for the priority of assignments of accounts receivable."[3] In addition to being in keeping with the expressed policy of the State, it was said that the approved rule "approaches more nearly the principle of fair play inherent in our law than would a rule which allows secret or unknown assignments to have priority."
The "question" which was passed upon by the certifying court is whether the law of Florida requires recognition of the so-called "English" rule or "American" rule of priority between assignees of successive assignments of an account receivable or other similar chose in action. Stated in its simplest form, the American rule would give priority to the assignee first in point of time of assignment, while the English rule would give preference to the assignment of which the debtor was first given notice. Both rules presuppose the absence of any estoppel or other special equities in favor of or against either assignee. The *97 English rule giving priority to the assignee first giving notice to the debtor is specifically qualified as applying "unless he takes a later assignment with notice of a previous one or without a valuable consideration". 31 A.L.R. 876; 110 A.L.R. 774; 6 Am.Jur. (2d) 297 (Assignments, Sec. 114). The American rule giving the first assignee in point of time the preference is applicable only when the equities are equal between the contending assignees, and if a subsequent assignee has a stronger equity than an earlier one, he would prevail. State ex rel. Crane Co. v. Stokke, 65 S.D. 207, (1937) 272 N.W. 811, 110 A.L.R. 761; and annotation at p. 777 of 110 A.L.R.
In the case here there are no special equities and no rights, such as subrogation, which would arise outside of the assignments. Also we regard that any conditions precedent to the assignments, which the parties had expressly or impliedly stipulated, have occurred.[4] In this posture, we are thus free to adjudicate which of these two rules, described as being "clearly defined and irreconcilable"[5] is in harmony with our jurisprudence.
The American rule for which petitioner contends is based upon the reasoning that an account or other chose in action may be assigned at will by the owner; that notice to the debtor is not essential to complete the assignment; and that when such assignment is made the property rights become vested in the assignee so that the assignor no longer has any interest in the account or chose which he may subsequently assign to another. Salem Trust Co. v. Manufacturers Finance Co., 1924, 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867; see also cases digested 31 A.L.R. 879-882 and 110 A.L.R. 775-778.
The English rule has its origin in pronouncements made in Dearle v. Hall (1823) 3 Russ. Ch. 1, 38 Eng. Reprint, 486, 10 Eng. Rul.Cas. 478. Subsequent cases in England considered the question and it seems to have become the settled rule in England. See discussion of the English treatment of question in Justice Butler's opinion in Salem Trust Co. v. Manufacturer's Finance Co., supra. In the Dearle v. Hall case Sir Thomas Plumer, master of the rolls, cited the 1749 case of Ryall v. Rowles, 1 Ves. Sr. 348, 27 Eng. Reprint, 1074, in which it had been held that in the case of a chose in action an assignee must do everything toward having possession which the subject admits and must do that which is tantamount to obtaining possession by placing every person who has an equitable or legal interest in the matter under an obligation to treat it as the assignee's property. It was stated:
"For this purpose you must give notice to the legal holder of the fund; in the case of a debt, for instance, notice tantamount to possession. If you omit to the debtor is, for many purposes, to give that notice you are guilty of the same degree and species of neglect as he who leaves a personal chattel, to which he has acquired a title, in the actual possession, and, under the absolute control, of another person."
It is undoubted that the creditor of an account receivable or other similar chose in action arising out of contract may assign it to another so that the assignee may sue on it in his own name and make recovery.[6] Formal requisites of such an assignment are not prescribed by statute and it may be accomplished by parol, by instrument in *98 writing, or other mode, such as delivery of evidences of the debt, as may demonstrate an intent to transfer and an acceptance of it.[7] In an early Florida case[8] it was held that notice to the debtor was not essential to effect an assignment of an open account. In that case the owners of the account in question made an assignment of all of their properties, including accounts receivable, to a trustee for the benefit of creditors. The debtor, Whitlock, was not notified of the assignment before writs of garnishment and attachment were served on him by one of the assignor's creditors. In a suit by the trustee against Whitlock he defended on the ground that the writs prevailed over the trustee's rights. The trial judge directed a verdict for Whitlock and in so doing held that notice to the debtor was essential to effect the assignment. The Supreme Court reversed for a new trial. However, the court deemed that there did exist an issue to be resolved by the jury, namely whether or not there had been a "delivery" of the choses in action to the trustee so as to complete the assignment. The Court discussed the question of delivery and observed that at "common law, a bargain and sale of personal property without delivery transfers the legal property in goods, but where the possession remains in the vendor unexplained, it is fraudulent as to creditors."
It was further said:
"But assuming delivery of the `open account' declared on in the case by the assignors to the assignee was necessary to the perfect vesting of title of the same in the assignee, what kind of delivery would he make?  and what would be required of him? It would seem to us, that, in ordinary cases delivering the evidence of indebtedness would be the most conclusive mode of giving possession."
* * * * * *
"This we deem the most conclusive mode, but whether possession is given or not is a question of fact, to be determined by the jury."
Therefore, the case cited above seems to have regarded that a delivery of the chose in action was necessary to complete the assignment.
It seems to be generally agreed that notice to a debtor of an assignment is necessary to impose on the debtor the duty of payment to the assignee, and that if before receiving such notice he pays the debt to the assignor, or to a subsequent assignee, he will be discharged from the debt. 6 Am.Jur.2d 278 (Assignments, Sec. 96). To regard the debtor as a total non-participant in the assignment by the creditor of his interests to another is to deny the obvious. An account receivable is only the right to receive payment of a debt which ultimately must be done by the act of the debtor. For the assignee to acquire the right to stand in the shoes of the assigning creditor he must acquire some "delivery" or "possession" of the debt constituting a means of clearly establishing his right to collect. The very nature of an account receivable renders "delivery" and "possession" matters very different and more difficult than in the case of tangible personalty and negotiable instruments which are readily capable of physical handling and holding. However, the very principles which render a sale of personal property with possession remaining in the vendor unexplained fraudulent and void as to creditors applies with equal urgency to choses in action which are the subject of assignment. It would seem to follow that the mere private dealing between the creditor and his assignee unaccompanied by any manifestations discernable to others having or considering the acquiring of an interest in the account would not meet the requirement of delivery and acceptance of possession which is essential to the consummation of the assignment. Proper notice to the debtor of the assignment is a manifestation of such delivery. *99 It fixes the accountability of the debtor to the assignee instead of the assignor and enables all involved to deal more safely.
We do not hold that notice to the debtor is the only method of effecting a delivery of possession of the account so as to put subsequent interests on notice of a prior assignment. The English rule itself does not apply to those who have notice of an earlier assignment. The American rule is not in harmony with the concepts expressed. It seems to be based largely upon the doctrine of caveat emptor which has a proper field of operation, but has many exceptions based on equitable considerations. It also seems to regard the commercial transfers of accounts as being the exclusive concern of the owner and assignee and that the assignee has no responsibility for the acts of the assignor with whom he leaves all of the indicia of ownership of the account. This view does not find support in the statute or decisional law of this State.
The district court of appeal did not specifically hold that the English rule was part of the common law of England as of July 4, 1776 so as to be part of our law under Sec. 2.01 F.S., F.S.A. It did say that it is "historically sustainable". After examining the authorities we conclude that although the rule is not shown to have been specifically expressed until pronounced in decisions subsequent to July 4, 1776, the principles and concepts from which it was largely drawn had found approval and application in English courts prior to that time. In the Knudson case[9] the federal court of appeals stated that under the common law assignments were perfected by giving actual notice to the debtor. At the least, we do not find this rule to be repugnant to the common law, and we do not find any support there for the so-called American rule. In two other fifth circuit cases[10] that court has recognized as the prevailing rule in Florida that "as between successive assignments of the same right the assignee first giving notice prevails".
With regard to Chap. 524, F.S., F.S.A. we examine it only to determine if it would require a disposition different from the judgment rendered in the trial court. We find, as did the district court of appeal, that the statute recognizes the principle of notice as an important element in the enforcement of assignments and such is consistent with the English rule. Even if the view of the Knudsen case, supra, should prevail, which view we now neither approve nor reject, to the effect that a filing under the statute is a mandatory, exclusive method of perfecting assignments of accounts receivable, the petitioner bank could not recover from the respondent debtor, because the bank made no filing under the statute and the debtor has no duty of filing.
We thus find that the so-called English rule which the trial and appellant court approved and applied is harmonious with our jurisprudence, whereas the so-called American rule is not. We concur in the decision of the district court of appeal in this case.
The writ of certiorari issued in this case is discharged.
DREW, C.J., and ROBERTS, CALDWELL and ERVIN, JJ., concur.
NOTES
[1] Zirin Enterprises v. Charles Pfizer & Co., Fla. 1961, 128 So.2d 594.
[2] Town of River Junction v. Maryland Casualty Co., CCA5, 110 F.2d 278 (1940).
[3] See Chap. 524, Fla. Stat., F.S.A., which provides a means of recording with the Secretary of State of certain assignments of accounts receivable and rendering such assignments "protected". Sec. 524.06 specifically renders the rights of an assignee against the account debtor to be subject to any good faith dealings by such debtor until he receives notice in writing of the particular assignment.
[4] American Fire's assignment provided for it to be activated by any default by the assignor in performance of or failure to pay for labor or materials in connection with any contract on which the assignee was surety. The bank's assignment was for the purpose of giving security for payment of a loan and thus would not be fully available unless there was a default in payment of the loan.
[5] 6 Am.Jur.2d 296.
[6] Spears v. West Coast Builders Supply Co., 101 Fla. 980, 133 So. 97; Robinson v. Springfield Co., 21 Fla. 203; Smith v. Westcott, 34 Fla. 430, 16 So. 332; Martyn v. Arnold, 36 Fla. 446, 18 So. 791. See also Sammis v. L'Engle, 19 Fla. 800; Richardson v. Holman, 160 Fla. 65, 33 So.2d 641.
[7] 3 Fla.Jur. 143, 144 (Assignments, Sees. 14 and 16); Cotten v. Williams, 1 Fla. 37; Tunno v. Robert, 16 Fla. 738.
[8] Walters v. Whitlock (1860) 9 Fla. 86.
[9] Miami National Bank v. Knudsen, CCA 5th; 300 F.2d 289 (1962). In this case it was held, one judge dissenting, that F.S. Chap. 524, F.S.A. established a mandatory, exclusive method of perfecting assignments of accounts receivable. We make no comment upon this ruling as neither assignee in the case sub judice attempted to come under the statute.
[10] Town of River Junction v. Maryland Casualty Co., CCA5, 110 F.2d 278 (1940); Coconut Grove Exchange Bank v. New Amsterdam Casualty Co., CCA5, 149 F.2d 73, 78 (1945). Both of these cases involved assignments of accounts but they also had other factors than notice to the debtor upon which their dispositions were based.