990 So.2d 3 (2008)
PROGRESSIVE AMERICAN INSURANCE COMPANY, Petitioner,
v.
STAND-UP MRI OF ORLANDO, as assignee of Eusebio Isaac, Respondent.
No. 5D07-2495.
District Court of Appeal of Florida, Fifth District.
July 11, 2008.
*4 Douglas H. Stein of Anania, Bandklayder, Blackwell, Baumgarten, Torricella & Stein, Miami, for Petitioner.
Todd E. Copeland and Robert J. Crohan, Jr., of Todd E. Copeland & Associates, P.A., Orlando, for Respondent.
PER CURIAM.
This personal injury protection (PIP) case began in county court, which ruled in favor of Petitioner, Progressive American Insurance Company ("Progressive American"), on the basis that all available PIP coverage had been exhausted. The Respondent, Stand-Up MRI of Orlando, as assignee of Eusebio Isaac ("Stand-Up MRI"), appealed to the Ninth Circuit Court in its appellate capacity. The circuit court reversed and found in favor of Stand-Up MRI. Progressive American petitioned this court for a writ of certiorari to quash the circuit court's opinion.
There are two issues in this case: 1) whether a PIP insurer is required to set aside a reserve fund for claims that are reduced or denied when other valid health care provider claims continue to be submitted; and 2) whether a PIP insurer can be liable for PIP benefits after the full extent of the available PIP coverage has been paid. We find no requirement exists to set aside a reserve for disputed claims, and, in the absence of a showing of bad faith, a PIP insurer is not liable for benefits once benefits have been exhausted.
We grant the petition for writ of certiorari because the circuit court departed from the essential requirements of the law. See Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995). Further, because the circuit court appellate panel already decided one important issue and remanded the case, Progressive American's injury cannot be remedied on plenary appeal.
The facts are undisputed. Eusebio Isaac was involved in a car accident in November 2004, and subsequently received medical treatment from a number of health care providers. His policy from Progressive American included the standard $10,000 in PIP coverage. PIP is part of the "Florida Motor Vehicle No-Fault Law," sections 627.730-627.7405, Florida Statutes, which the legislature enacted in 1971.
The No-Fault Law is a comprehensive statutory scheme, the purpose of which is to "provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits." § 627.731, Fla. Stat. (2006)....
The "Required Personal Injury Protection" provision, or the PIP statute, is codified at section 627.736 and is "an integral part of the no-fault statutory *5 scheme." Flores v. Allstate Ins. Co., 819 So.2d 740, 744 (Fla.2002).
Allstate Ins. Co. v. Holy Cross Hosp., Inc., 961 So.2d 328, 331-32 (Fla.2007). Under section 627.736(1)(a), PIP benefits are required to be paid to the injured insured's health care providers at 80% of their submitted bills for "all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services" until the coverage of $10,000 is exhausted.
In accordance with the statute and the insurance policy, Progressive American promptly began paying Isaac's health care providers as they applied for payment. One of those health care providers, Stand-Up MRI, performed an MRI on Isaac and billed Progressive American under three of the American Medical Association's CPT codes. Progressive American paid, in full (80% of $1,166), the primary code which covered "Magnetic resonance imaging, spinal canal and contents, lumbar," but denied the charges (80% of $700 = $560) for the two other codes based on the results of an independent peer review, which found that "medical justification and/or necessity cannot be established for the services billed." Denial was also based on the terms of Isaac's policy of insurance.
After its claim for the lesser charges was denied, Stand-Up MRI mailed Progressive American a 15-day "demand letter pursuant to F.S. 627.736(11)," demanding that its bills, interest, postage and a 10% penalty be paid. In the event Progressive American did not pay, the demand letter also requested it to "please hold these monies in trust until the amount being disputed is settled." Notwithstanding this request, Progressive American continued paying or denying claims from health care providers as they were submitted.
Stand-Up MRI subsequently filed its complaint, as Isaac's assignee, alleging that Progressive American failed to pay it $560. It was served on Progressive American on June 27, 2005. However, on June 17, 2005, Isaac's available PIP coverage was exhausted after Progressive American paid one of Isaac's other health care providers. Progressive American moved for summary judgment on the basis that the insurance benefits had been exhausted.[1] After conducting a comprehensive hearing, the county court ruled that Progressive American had not engaged in any bad faith and granted its motion for summary final judgment finding, in part, "[t]here is no evidence that Defendant's exhaustion of Eusebio Isaac's PIP benefits was undertaken in bad faith and Plaintiff cannot gain more from the insurance company than the contractual benefit amount in the absence of a showing of bad faith on the part of Defendant." We agree.
We also agree that there is no legal requirement that an insurer set aside a reserve fund for claims which are reduced or denied.[2] As the court in Simon v. Progressive Express Ins. Co., 904 So.2d 449, 450 (Fla. 4th DCA 2005), reasoned, requiring an insurer to maintain a reserve fund for disputed claims "would result in unreasonable exposure of the insurance company and would be to the detriment of the insured and other providers with properly submitted claims." Further, any payments that were reduced or denied "would have to be held in reserve until the statute of limitations period expired or suit was *6 filed and concluded." Id. As a result, this would create delays in the payment of other claims and defeat the purpose of the PIP statute's prompt pay provisions. Id.
The circuit court appellate panel recognized that Simon rejected the argument that an insurer is required to reserve any available funds at the time a claim is submitted. Notwithstanding this recognition, the circuit court reversed the county court's order by quoting from one of its prior opinions:[3]

Simon is not dispositive of the remaining issue in this case, which is whether Appellee violated Appellant's right to priority payment over subsequent providers and therefore may be responsible for the claim plus statutory interest and penalties.
In reaching this conclusion, the circuit court read "the English Rule" into the PIP statute. This rule provides that, between assignees of an account, the assignee who first gives notice of his claim to the debtor is preferred and has prior rights. See State Farm Fire & Cas. Co. v. Ray, 556 So.2d 811 (Fla. 5th DCA 1990) (citing Boulevard Nat'l Bank v. Air Metal Indus., Inc., 176 So.2d 94, 96 (Fla.1965)). However, the situation in the present case does not violate the English Rule because it is first come-first served, for medical providers as long as their PIP claim is deemed to be compensable. See § 627.736(5)(a); see also Farinas v. Fla. Farm Bureau Gen. Ins. Co., 850 So.2d 555 (Fla. 4th DCA 2003) (when there are multiple claimants, policy limits should not be exhausted without an attempt to settle as many claims as possible).
Applying the English Rule to PIP claims results in the very outcome that the court in Simon sought to prevent. Holding funds in reserve until the completion of litigation is detrimental to everyone except the provider(s) who is keeping the funds tied up. It subjects the insurer to unreasonable exposure, is detrimental to other providers with properly submitted claims, and detrimental to the insured who is entitled to both prompt treatment and prompt payment for that treatment. Furthermore, it is contrary to the legislative intent to have these bills quickly paid. See Ivey v. Allstate Ins. Co., 774 So.2d 679, 683-84 (Fla.2000) ("Without a doubt, the purpose of the no-fault statutory scheme is to `provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption.'").
If allowed to stand, the circuit court's ruling would require insurers to pay insurance benefits in excess of the stated policy limit, even after the insurer fully complied with the duties owed to its insured. This outcome is not supported by the statute and violates every principle of law governing insurance contracts. Nor can the circuit court's opinion be justified on bad faith or wrongdoing on behalf of Progressive American. As the circuit court stated:
The Defendant[s] did nothing wrong here. They were under a contract to the insured for a limited amount. They paid that amount in toto. They are not responsible for the insured's over-use of this policy. The Defendant[s] did not gain anything out of their actions. They *7 fully performed their contract with the insured. It is to the insured that the assignees should look for any additional payments.
As a result, we agree with the commonsense reasoning of the circuit court in Neuro-Imaging Assoc., P.A. v. Nationwide Ins. Co., 10 Fla. L. Weekly Supp. 738a (Fla. 15th Jud.Cir.Ct.2002):
There is no logical basis for any allegation of bad faith involved here, on the part of the Defendant [insurer]; they saved no money by their actions; what is the basis of their wrongdoing? It surely can't be that they were careful about the amount of the payments that they made to a given provider as other providers' claims continued to come in from more assignees demanding payment out of the diminishing fund pool, which ran out. The Court cannot see why the Defendant should be punished for having fully performed their contract nor why they should have to pay more than 100% of the benefits because the assignor kept assigning and the assignees kept accepting the assignments. Legally, unless the assignment was an absolute assignment of all of the benefits, the Defendant did not have the luxury of holding off in the payment of legitimate bills from other providers while there are funds available, until sometime in the future it is determined either by a court or further investigation by the Defendant, that it should have paid more to the Plaintiff. If it had done that, there would be as many lawsuits as there were providers who didn't get fully paid. This is not a reasonable requirement to hold over an insurance company.
The circuit court also found significant that "PIP benefits remained available until after Appellant filed its complaint." The circuit court either overlooked or disregarded the fact that the benefits were exhausted before Progressive American was served with the complaint. The circuit court concluded that, because of Progressive American's "disregard" of Stand-Up MRI's "priority claim," "it appears that the benefits are overdue." This was based upon a portion of section 627.736(4), Florida Statutes (2004), which provides in part:
(4) Benefits; when due.Benefits due from an insurer under ss. 627.730-627.7405 shall be primary, ... and shall be due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy issued....
* * * *
(b) Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same....
In making the assessment that payment was overdue, the circuit court overlooked the portion of section 627.736(4)(b), which specifically contemplates the reduction or denial of claims and provides for exceptions to the thirty-day time limit:
When an insurer pays only a portion of a claim or rejects a claim, the insurer shall provide at the time of the partial payment or rejection an itemized specification of each item that the insurer had reduced, omitted, or declined to pay and any information that the insurer desires the claimant to consider related to the medical necessity of the denied treatment *8 or to explain the reasonableness of the reduced charge.... However, notwithstanding the fact that written notice has been furnished to the insurer, any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment.
In the present case, Progressive American provided "reasonable proof" why it was not paying Stand-Up MRI's additional bills: coverage was exhausted. Thus, Stand-Up MRI's bills were never overdue. See United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 86 (Fla.2001) ("[A]ny payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer," quoting section 627.736(4)(b), Florida Statutes); State Farm Mut. Auto. Ins. Co. v. Jones, 789 So.2d 504, 506 (Fla. 1st DCA 2001) (if benefits were not actually due, they could not be overdue); see also United Auto. Ins. Co. v. Bermudez, 980 So.2d 1213, 1217 n. 4 (Fla. 3d DCA 2008) citing AIU Ins. Co. v. Daidone, 760 So.2d 1110, 1112 (Fla. 4th DCA 2000) ("the thirty-day period in section 627.736(4) applies only to benefits which are reasonable and necessary as a result of the accident, and, as such, a claim for unrelated, unreasonable, or unnecessary treatment may be challenged subsequent to the thirty-day time period set forth in section 627.736(4).").
Because the opinion of the circuit court sitting in its appellate capacity is legally erroneous and contrary to the intent of the PIP statute, it constitutes a departure from clearly established law resulting in a miscarriage of justice. Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla. 2003).
We therefore GRANT the Writ of Certiorari and QUASH the circuit court's decision.
PLEUS, MONACO, and COHEN, JJ., concur.
NOTES
[1] Actually, Progressive American paid $10,236 from bills totaling $12,907.
[2] Filing a "demand letter" does not require an insurer to hold funds in a reserve fund. It merely satisfies section 627.736(11)'s condition precedent that such a letter be sent before filing suit against the insurer.
[3] The lower courts should not forget that a Florida circuit court is equally bound by a decision of a district court of appeal, if no other district court of appeal decision addresses the issue. United Auto. Ins. Co. v. Tienna, 780 So.2d 1010, 1011 n. 2 (Fla. 4th DCA 2001).