WARNER, J.
In two cases, we initially accepted appeals from the county court certifying various questions “of great public importance” involving medical providers seeking PIP benefits from insurance companies. These were consolidated because three of the four questions were the same in both suits. After having considered both appeals, we conclude that the appeal in Northwoods Sports Medicine and Physical Rehabilitation, Inc. v. State Farm Mutual Automobile Insurance Co. does not raise any questions of great public importance, because the trial court did not rule on two of the issues raised and the third issue has already been consistently decided by the appellate courts of this state. As to the claims in Wellness Association of Florida, Inc. v. USAA Casualty Insurance Co., we accept jurisdiction of that appeal and affirm the judgment of the trial court holding that the medical provider is precluded from collecting from the insurer because of the exhaustion of PIP benefits provided by the insurer.

Facts

In both cases, an insured of State Farm and an insured of USAA were injured in different accidents. Both insureds needed medical treatment as a result of injuries sustained. State Farm’s insured received medical treatment from Northwoods in September of 2008 and assigned the PIP benefits under her policy, which had an effective date of January 1, 2008, to North-woods. Northwoods billed State Farm, but State Farm reduced the bills to 80% of 200% of the Medicare fee schedule pursuant to section 627.736(5)(a)2., Florida Statutes (2008). Northwoods made a pre-suit demand to State Farm for the unpaid portion of the bill, which State Farm found deficient for failing to specify the exact amount claimed to be due and owing.
Meanwhile, State Farm continued to pay other medical providers who had also been assigned PIP benefits by the insured. Pri- or to the filing of Northwoods’s suit for breach of contract against State Farm, the insured’s PIP benefits were exhausted. After Northwoods filed suit to collect the remainder of its bill, State Farm moved for summary judgment based on several grounds, including exhaustion of benefits. Before the motion for summary judgment was heard, Northwoods amended its complaint to allege that State Farm had reduced its bills improperly and in bad faith by relying on a fee schedule not permitted by law.
Following the hearing on the motion for summary judgment, the trial court entered a one-line order granting the motion based *1052 on exhaustion of benefits. In a later final judgment, the court found:
In this matter no determination has been made regarding the legal issue of whether [State Farm] was permitted to apply a fee limitation under F.S. § 627.736(5)(a)(2)(f). This Court’s entry of final summary judgment is premised solely on [State Farm]’s exhaustion of benefits defense.
At the behest of Northwoods, the county court certified three questions:
1. DID SIMON V. PROGRESSIVE EXPRESS INS. CO., 904 So.2d 449, 450 (Fla. 4TH DCA 2005) ABROGATE THE ENGLISH RULE OF PRIORITIES AS ANNOUNCED BY THE FLORIDA SUPREME COURT IN BOULEVARD!]NATIONAL BANK OF MIAMI V. AIR METAL INDUSTRIES, INC., 176 So.2d 94 (Fla.1965) AND APPLIED TO PIP CASES IN STATE FARM FIRE AND CASUALTY CO. V RAY, 556 So.2d 811 (Fla. 5TH DCA 1990)?
2. DOES AN INSURER’S RELIANCE ON AN INTERPRETATION OF THE NO-FAULT STATUTE WHICH IS LATER DETERMINED TO BE AN INCORRECT INTERPRETATION CONSTITUTE THE “REASONABLE PROOF” REFERENCED IN THAT PORTION OF F.S. SECTION 627.736(4)(b) WHICH STATES THAT “HOWEVER, NOTWITHSTANDING THE FACT THAT WRITTEN NOTICE HAS BEEN FURNISHED TO THE INSURER, ANY PAYMENT SHALL NOT BE DEEMED OVERDUE WHEN THE INSURER HAS REASONABLE PROOF TO ESTABLISH THAT THE INSURER IS NOT RESPONSIBLE FOR THE PAYMENT”?
3.IN A PERSONAL INJURY PROTECTION MATTER, MAY A TRIAL COURT ENTER FINAL SUMMARY JUDGMENT IN FAVOR OF AN INSURER ON AN EXHAUSTION OF BENEFITS DEFENSE WHEN PLAINTIFF HAS ALLEGED IN ITS COMPLAINT THAT THE INSURER “HAS IN BAD FAITH, MANIPULATED OR OTHERWISE ACTED IMPROPERLY IN REDUCING THE PLAINTIFF’S BILLS”?
In the Wellness case, USAA’s insured received medical treatment from Wellness in 2008 and assigned the PIP benefits under his policy, which was in effect through March 2008, to Wellness. Wellness submitted a claim to USAA for PIP benefits, but USAA failed to pay the full claim within thirty days. Instead, it reduced the claims using the payment methodology of section 627.736(5)(a)2., Florida Statutes (2008). In 2010, Wellness filed a complaint for damages against USAA and served the insurance company. At the time suit was filed, less than $14 in unpaid PIP benefits remained. While the lawsuit was pending, USAA paid other medical providers that amount, exhausting PIP benefits. USAA thereafter moved for summary judgment based on exhaustion of benefits. Wellness amended its complaint to add allegations that USAA had reduced Wellness’s bills in bad faith by using a fee schedule not permitted by the no-fault law.
The trial court entered summary judgment in favor of USAA based upon exhaustion of benefits. In its final judgment, relying on Simon v. Progressive Express Insurance Co., 904 So.2d 449 (Fla. 4th DCA 2005), the court rejected Wellness’s argument that the PIP statute mandated a “first in/first out” order of payment, mean *1053 ing that later-submitted claims could not exhaust benefits so as to prevent payment of an earlier submitted claim. The court also rejected Wellness’s argument that summary judgment was inappropriate where it had alleged bad faith, finding neither the pleadings nor any evidence presented supported a bad faith claim. Finally, the trial court acknowledged Kings-way Amigo Insurance Co. v. Ocean Health, Inc., 68 So.3d 68 (Fla. 4th DCA 2011), which held that an insurance company must give notice in its policy prior to using the payment methodology in section 627.736(5)(a)2., but noted that Kingsway had not been decided at the time USAA made its payments to Wellness and thus was not controlling. It cited two circuit court cases which both held that an insurer could not be acting in bad faith when it relies on its interpretation of the law at the time, in absence of binding authority to the contrary. See Virtual Imaging Servs., Inc. v. United Servs. Auto. Ass’n, 18 Fla. L. Weekly Supp. 491a (Fla. 11th Cir.Ct. Feb. 2, 2011); Pembroke Pines MRI, Inc. v. USAA Cas. Ins. Co., 17 Fla. L. Weekly Supp. 479a (Fla. 17th Cir.Ct. Mar. 29, 2010). The court later entered an agreed order certifying the same questions as in the Northwoods case, plus an additional question:
4. IN AN ACTION BY AN ASSIGNOR FOR NO FAULT INSURANCE BENEFITS FOUNDED ON A CLAIM FOR BREACH OF CONTRACT, DOES A POST-SUIT EXHAUSTION OF BENEFITS ABSOLVE THE INSURER FROM ANY RESPONSIBILITY TO PAY AN OTHERWISE VALID CLAIM WHERE THE EXHAUSTION OCCURRED AFTER THE INSURER: (A) PAID AN AMOUNT THAT THE PROVIDER CLAIMS IS LESS THAN REQUIRED BY THE CONTRACT; (B) RECEIVED A PRE-SUIT DEMAND LETTER NOTIFYING THE INSURER OF THE MEDICAL PROVIDER’S DISPUTE; AND (C) WAS SERVED WITH THE FILED COMPLAINT?
In the order certifying the questions, the parties agreed that the issues should be certified to prevent inconsistent rulings among the various county courts in the state.

Declining Jurisdiction in Northwoods

Although we initially accepted jurisdiction of the appeal in Northwoods, that was in large part based upon a memo on jurisdiction filed in Wellness. Upon review of the judgment in Northwoods, however, it is apparent that we should not have accepted jurisdiction because the North-woods case does not appear to meet any of the criteria for the exercise of discretionary jurisdiction under Florida Rule of Appellate Procedure 9.030(b)(4)(A).
There is little guidance as to when the district court should accept jurisdiction over a final order certified by the county court to be of great public importance. In Star Casualty v. U.S.A. Diagnostics, Inc., 855 So.2d 251 (Fla. 4th DCA 2003), we explained that the district court of appeal had absolute discretion as to whether to consider such a case, which bypasses an appeal to the circuit court. Id. at 252. In Star, we also initially took jurisdiction, only to discharge it after full review of the case. Id. at 251-52. This is similar to cases in which the supreme court initially accepts discretionary jurisdiction, only to discharge it later as improvidently granted. See, e.g., Brantley v. State, 115 So.3d 360, 361 (Fla.2013).
In this case, the first certified question asks whether Simon abrogated the English rule of priorities in assign- *1054 merits. Simon addressed the English rule and rejected its application to PIP claims, due to the statutory requirements placed on the insurer to make expeditious payment on all PIP claims. Simon, 904 So.2d at 449-50. Simon was followed on this issue in Progressive American Insurance Co. v. Stand-Up MRI of Orlando, 990 So.2d 3, 5 (Fla. 5th DCA 2008), and Sheldon v. United Services Automobile Ass’n, 55 So.3d 593, 595-96 (Fla. 1st DCA 2010), all of which predated the final order in this case. Where the district courts have already ruled on the issue and uniformly have answered the question, this does not pose a question of great public importance.
Another principle we consider in deciding whether to exercise our discretionary jurisdiction over a county court appeal is that a “prior judicial determination of the certified question is necessary before an appellate court may properly be called upon to answer it.” Inv. & Income Realty, Inc. v. Bentley, 480 So.2d 219, 221 (Fla. 5th DCA 1985). In other words, where the county court has not ruled on the issue, the appellate court should not rule on it in the first instance. Otherwise, we would be issuing an advisory opinion, something we do not have jurisdiction to do. In the Northwoods case, the county court ruled- solely on the exhaustion of benefits issue. It expressly did not rule nor make any judicial determination on the issues raised in the other two certified questions. Therefore, this court should decline to rule in the first instance on those questions.
For these reasons, we discharge our jurisdiction in Northwoods Sports Medicine and Physical Rehabilitation, Inc. v. State Farm Mutual Automobile Insurance Co. and transfer the appeal to the circuit court of the Fifteenth Judicial Circuit.

Wellness

Wellness raises all of the same questions as Northwoods and adds another, premised on the fact that USAA did not finally exhaust the PIP benefits until after Wellness had filed suit and served USAA. The last question does not appear to have been addressed by other district courts, and some circuit court authority suggests that trial courts may be rendering inconsistent results. Therefore, we do exercise our jurisdiction in this case, although we will explain why we will not answer all of the questions posed.
1. DID SIMON V. PROGRESSIVE EXPRESS INS. CO., 904 So.2d 449, 450 (Fla. 4TH DCA 2005) ABROGATE THE ENGLISH RULE OF PRIORITIES AS ANNOUNCED BY THE FLORIDA SUPREME COURT IN BOULEVARD! JNATIONAL BANK OF MIAMI V. AIR METAL INDUSTRIES, INC., 176 So.2d 94 (Fla.1965) AND APPLIED TO PIP CASES IN STATE FARM FIRE AND CASUALTY CO. V. RAY, 556 So.2d 811 (Fla. 5TH DCA 1990)?
We have already noted that the district courts have consistently held that the English rule of priorities, which gives priority to an assignee first giving notice to the creditor, does not apply to PIP payments which are governed by statute. In Simon, we noted that otherwise an insurance company would have to set up a reserve for each bill submitted, which
would result in unreasonable exposure of the insurance company and would be to the detriment of the insured and other providers with properly submitted claims. Under such a theory, all potential payments to a service provider that were denied, or were subject to a reduction, would have to be held in reserve until the statute of limitations period expired or a suit was filed and conclud *1055 ed. This would delay and reduce availability of funds for the payment of claims to other providers and would be inconsistent with the PIP statute’s “prompt pay” provisions. See §§ 627.613, and 627.662(7), Fla. Stat. (provision established to expedite payment to service providers). It is the obligation of insurance companies to attempt to settle as many claims as possible. Farinas v. Florida Farm Bureau General Insurance Co., 850 So.2d 555, 560 (Fla. 4th DCA 2003). It is also a prerogative of insurance companies to pay, reduce, or deny claims. Id.
Simon, 904 So.2d at 450. This court thus affirmed judgment for the insurer based on exhaustion of benefits. Id. Stand-Up MRI, 990 So.2d at 5, followed Simon, as did Sheldon, 55 So.3d at 595-96 (applying Simon and Stand-Up MRI and concluding that, after exhaustion of benefits, provider could not seek interest or attorney’s fees under the PIP statute because benefits were never overdue). In sum, Simon did not “abrogate” the English Rule adopted by the supreme court in Boulevard National Bank of Miami v. Air Metal Industries, Inc., 176 So.2d 94 (Fla.1965). Instead Simon and Stand-Up MRI explain why the rule has limited applicability in the PIP context. Therefore, we continue to adhere to Simon and its progeny.
2. DOES AN INSURER’S RELIANCE ON AN INTERPRETATION OF THE NO-FAULT STATUTE WHICH IS LATER DETERMINED TO BE AN INCORRECT INTERPRETATION CONSTITUTE “REASONABLE PROOF” REFERENCED IN THAT PORTION OF F.S. SECTION 627.736(4)(b) WHICH STATES THAT “HOWEVER, NOTWITHSTANDING THE FACT THAT WRITTEN NOTICE HAS BEEN FURNISHED TO THE INSURER, ANY PAYMENT SHALL NOT BE DEEMED OVERDUE WHEN THE INSURER HAS REASONABLE PROOF TO ESTABLISH THAT THE INSURER IS NOT RESPONSIBLE FOR THE PAYMENT”?
We decline to answer this question, because the trial court did not rule on the issue. See Inv. & Income Realty, 480 So.2d at 221. The trial court simply ruled that the insurer did not automatically violate the PIP statute payment provisions by not paying the full amount of the claimed bill within thirty days. See United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 87 (Fla.2001).
3. IN A PERSONAL INJURY PROTECTION MATTER, MAY A TRIAL COURT ENTER FINAL SUMMARY JUDGMENT IN FAVOR OF AN INSURER ON AN EXHAUSTION OF BENEFITS DEFENSE WHEN PLAINTIFF HAS ALLEGED IN ITS COMPLAINT THAT THE INSURER “HAS IN BAD FAITH, MANIPULATED OR OTHERWISE ACTED IMPROPERLY IN REDUCING THE PLAINTIFF’S BILLS”?
Despite requesting the trial court to certify this as a question of great public importance, Wellness made no argument in its appellate brief on this issue. Therefore, it has abandoned that issue. See Polyglycoat Corp. v. Hirsch Distribs., Inc., 442 So.2d 958, 960 (Fla. 4th DCA 1983) (“This Court will not depart from its dispassionate role and become an advocate by second guessing counsel and advancing for [counsel] theories and defenses which counsel either intentionally' or unintentionally has chosen not to mention. It is the duty of counsel to prepare appellate briefs so as to acquaint the Court with the material facts, the points of law involved, and the legal arguments supporting the positions of the respective parties.”).
*1056 4. IN AN ACTION BY AN ASSIGNOR FOR NO FAULT INSURANCE BENEFITS FOUNDED ON A CLAIM FOR BREACH OF CONTRACT, DOES A POST-SUIT EXHAUSTION OF BENEFITS ABSOLVE THE INSURER FROM ANY RESPONSIBILITY TO PAY AN OTHERWISE VALID CLAIM WHERE THE EXHAUSTION OCCURRED AFTER THE INSURER:
(A) PAID AN AMOUNT THAT THE PROVIDER CLAIMS IS LESS THAN REQUIRED BY THE CONTRACT;
(B) RECEIVED A PRE-SUIT DEMAND LETTER NOTIFYING THE INSURER OF THE MEDICAL PROVIDER’S DISPUTE; AND (C) WAS SERVED WITH THE FILED COMPLAINT?
We answer this question in the affirmative, extending the reasoning of Simon, Stand-Up MRI, and Sheldon.
Simon rejected the “reserve or hold” theory of the medical provider — that, when an insurance company reduces a provider’s claim, it must set up a reserve in case it is later required to pay the full claim. Simon, 904 So.2d at 450. We surmised that such a system would undermine the prompt payment promise of the PIP statute and the insurance company’s obligation to settle as many claims as possible. Id. The Fifth District agreed with us in Stand-Up MRI, and stated:
Holding funds in reserve until the completion of litigation is detrimental to everyone except the provider(s) who is keeping the funds tied up. It subjects the insurer to unreasonable exposure, is detrimental to other providers with properly submitted claims, and detrimental to the insured who is entitled to both prompt treatment and prompt payment for that treatment. Furthermore, it is contrary to the legislative intent to have these bills quickly paid.
Stand-Up MRI, 990 So.2d at 6.
In these cases, as well as in Sheldon> 55 So.3d at 595-96, the insurer had first either rejected or reduced payment on a claim after submission of the provider’s bills. PIP benefits were then exhausted either prior to the medical provider filing suit on the amount it claimed due (Simon ), or prior to service of the complaint on the insurance company (Stand-Up MRI and Sheldon). Here, exhaustion occurred after service of Wellness’s complaint on USAA. Although each court noted the timing of the exhaustion of benefits, none explained why it was important to the court’s analysis. We conclude, however, that where the reasonableness of the provider’s claim is still in dispute, post-suit exhaustion of benefits extinguishes the provider’s right to further payments, as long as exhaustion is prior to the establishment of the amount to which the medical provider is entitled under PIP.
A careful examination of Boulevard reveals why the English Rule adopted in that case does not apply to PIP cases, and why, accordingly, post-suit exhaustion of PIP benefits may bar a provider from collecting an earlier-submitted claim. In Boulevard, a subcontractor assigned its rights to payment from the general contractor first as security for the issuance of a surety bond and later, as security for a loan, to a bank. Boulevard, 176 So.2d at 95-96. It does not appear that the general contractor, which held the payments due, disputed the amounts claimed by the surety or the bank, nor did the general contractor dispute how much it owed to the subcontractor. Id. at 96. It paid the amounts due to the subcontractor to the first assignee which had given it notice of the assignment. Id. The parties stipulated that all of the conditions precedent to the assignment *1057 had occurred, namely, default by the subcontractor on the performance of its obligations under the surety agreement and default on repayment of the loan to the bank. Id. at 97. The supreme court thus limited its consideration to the question of which rule to apply: the American Rule, which required payment on the assignment which had occurred first in time, with equitable exceptions, regardless of notice to the debtor of the assignment; or the English Rule, which required payment to the assignee which had first given notice of the assignment to the debtor. Id. at 96-97. The court ruled that Florida follows the English Rule. Id. at 99.
The general contractor, which held the funds which were due to the subcontractor, had no interest in whether the amounts claimed to be due were appropriate and due to the assignees, nor did the general contractor claim that’ the monies were due to it. In other words, it does not appear that in Boulevard there was any dispute between the parties as to the amounts due or the amounts owed. The supreme court therefore adopted the English Rule in a circumstance where there were no factual disputes as to the amounts due.
In contrast, under PIP, disputes commonly arise as to the amount due to the provider assignee, based on the policy language or the PIP statutory provisions. The insurance company has the duty to pay only the reasonable expenses for medically necessary care. See § 627.736(l)(a), Fla. Stat. (2008). A medical provider may charge only a reasonable amount for services provided under section 627.736(5)(a), Florida Statutes (2008). Even the assignment executed by USAA’s insured to Wellness limits the assignment to amounts which would be allowed under PIP and section 627.736, when it states that the assignment is “for services rendered to me covered by Personal Injury Protection (PIP) coverage ... and in accordance with Florida Statutes.” (emphasis added). In other words, in order to activate the right to claim PIP payments under the assignment, the provider’s bills must be compensable under the statute in that they have been determined to be reasonable and necessary.
When the insurance company denies or reduces payment, a dispute arises as to whether the additional amounts are covered by the statute as being either medically necessary or reasonable in amount. Section 627.736(4) sets forth very specific requirements on how the insurance company must treat claims of providers. Even after a claim is denied or reduced, an insurance company may still defend a suit by the provider claiming additional amounts on the grounds that the service was not medically necessary or that the amount was not reasonable. See § 627.736(4)(b), Fla. Stat. (2008); Rodriguez, 808 So.2d at 87-88.
Until the necessity of the services and reasonableness of the charges is settled, their compensability under PIP is not established, and assignment of PIP benefits has not matured. Thus, the English Rule would have application only to those claims which are settled either by insurance company acceptance or by resolution of disputed charges through suit.
We hold that post-suit exhaustion of benefits should be treated no differently than pre-suit exhaustion of benefits, as long as the benefits’ compensability under PIP has not been established. Once the PIP benefits are exhausted through the payment of valid claims, an insurer has no further liability on unresolved, pending claims, absent bad faith in the handling of the claim by the insurance company.
Having answered those questions which we deem to have been preserved for re *1058 view, we affirm the final judgment of the trial court in Wellness Association of Florida, Inc. v. USAA Casualty Insurance Co.
As to Northwoods Sports Medicine and Physical Rehabilitation, Inc. v. State Farm Mutual Automobile Insurance Co. we discharge our jurisdiction and transfer the appeal to the circuit court of the Fifteenth Judicial Circuit.
CONNER and FORST, JJ., concur.