# Third District Court of Appeal

## State of Florida

Opinion filed February 22, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1612
Lower Tribunal No. 16-5737 CC
_____

**Comprehensive Health Center, LLC,
a/a/o Angela Cooper,**
Appellant,

vs.

**Star Casualty Insurance Company,**
Appellee.

An Appeal from the County Court for Miami-Dade County, Gina Beovides and Luis Perez-Medina, Judges.

Douglas H. Stein, P.A., and Douglas H. Stein, for appellant.

Hunker Appeals, Sarah Hafeez and Thomas L. Hunker (Fort Lauderdale), for appellee.

Before EMAS, GORDO and BOKOR, JJ.

GORDO, J.

Comprehensive Health Center, LLC a/a/o Angela Cooper ("CHC") appeals the entry of final judgment and summary judgment in favor of Star Casualty Insurance Company ("Star"). We have jurisdiction. Fla. R. App. P. 9.030(b)(1)(A). Because no genuine issue of material fact exists that exhaustion occurred as a matter of law after the issuance of checks totaling $10,000, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2013, Angela Cooper, a Star insured, was injured in a motor vehicle accident. CHC provided medical treatment to Cooper. In exchange, Cooper assigned her right to receive personal injury protection (PIP) benefits to CHC. CHC submitted bills to Star for services rendered to Cooper. Between March 2014 and April 2015, Star mailed four checks to CHC in fulfillment of its payment of the bills submitted.

In July 2015, CHC sent a pre-suit demand letter to Star seeking full reimbursement of the amounts billed. Star responded and advised CHC that the PIP benefits under the policy were exhausted when it made a final payment to another provider. In late January 2016, CHC returned two of the previously issued checks to Star notifying Star it never deposited or cashed the checks. CHC took issue with language printed on the checks and

2

demanded Star reissue the checks to them without the contested language. Star did not reissue the checks.

Three months later, CHC filed a complaint against Star for breach of the insurance policy. Star filed its answer and affirmative defenses asserting exhaustion of benefits pursuant to section 627.736(1), Florida Statutes.[1] CHC filed a reply arguing exhaustion had not occurred because it had not deposited two of the checks mailed by Star and therefore their value could not be considered paid under the PIP statute. CHC and Star filed cross-motions for summary judgment on the exhaustion defense. The trial court held a hearing and concluded that exhaustion occurred as a matter of law when Star made payment to CHC and issued checks totaling $10,000. This appeal followed.

## STANDARD OF REVIEW

The appellate standard of review on an order of summary judgment is de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Because the hearing and order on summary judgment were entered prior to May 1, 2021, the amended summary judgment rule does not apply. See In re Amends. to Fla. R. of Civ. P. 1.510, 317 So. 3d

---

[1] For purposes of this opinion, section 627.736 shall be referred to as the PIP statute.

72, 77 (Fla. 2021). Additionally, the interpretation of a statute is subject to a de novo standard of review. See Gomez v. Vill. of Pinecrest, 17 So. 3d 322, 325 (Fla. 3d DCA 2009).

**LEGAL ANALYSIS**

"The purpose of PIP benefits is to provide up to $10,000 for medical bills and lost wages without regard to fault." Flores v. Allstate Ins. Co., 819 So. 2d 740, 744 (Fla. 2002). Pursuant to section 627.736(1), Florida Statutes, PIP benefits are due to an insured, limited to $10,000 for injuries arising out of ownership, maintenance or use of a motor vehicle.[2] Once the full $10,000 of PIP benefits are "exhausted through the payment of valid claims, an insurer has no further liability on unresolved, pending claims, absent bad faith in the handling of the claim by the insurance company." Northwoods Sports Med. & Physical Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 137 So. 3d 1049, 1057 (Fla. 4th DCA 2014).

The sole issue presented here is whether exhaustion of benefits can be found where an insurer sent checks as payment and the provider chose not to cash them. CHC argues benefits were not exhausted because

---

[2] As an assignee, CHC was only entitled to the same benefits Cooper had at the time of the assignment. See Union Indemnity Co. v. City of New Smyrna, 130 So. 453, 455 (1930) (finding an assignment conveys no greater right than the assignor had at the time of the assignment).

4

payment did not occur as CHC chose not to deposit two of the checks Star issued to it in fulfillment of payment. Star contends benefits were exhausted pursuant to the statute because it tendered payment to CHC by mailing the checks.

Thus, to answer this question, we must determine when benefits are considered "paid" under the PIP statute. "Our statutory analysis begins with the plain meaning of the actual language of the statute, as we discern legislative intent primarily from the text of the statute." Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013). "'When the language of the statute is clear and unambiguous and conveys a clear and definite meaning . . . the statute must be given its plain and obvious meaning.'" City of Bartow v. Flores, 301 So. 3d 1091, 1096 (Fla. 1st DCA 2020) (quoting Fla. Dep't of Revenue v. New Sea Escape Cruises, Ltd., 894 So. 2d 954, 960 (Fla. 2005)).

As correctly noted by the trial court, the term "payment" itself is not defined in the definitions section of the PIP statute. [3] See § 627.732, Fla.

---

[3] We note the trial court conducted a proper analysis of the plain and ordinary meaning of the term "payment." The Oxford English Dictionary defines "payment" as "[t]he action, or an act, of paying," "[a] sum of money (or other thing) paid," "[t]he action, or an act, of rendering to a person anything due, deserved, or befitting, or of discharging an obligation; the thing so rendered." PAYMENT, Oxford English Dictionary (3d ed. 1955). Payment is also defined as "[p]erformance of an obligation by the delivery of money or some

5

Stat. "In ascertaining the plain meaning of the statute, [however,] the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts at 167 (2012) (stating a "judicial interpreter [should] consider the entire text, in view of its structure and of the physical and logical relation of its many parts," when interpreting any particular part of the text). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme— because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988) (internal citations omitted).

---

other valuable thing accepted in partial or full discharge of the obligation" and "[t]he money or other valuable thing so delivered in satisfaction of an obligation." PAYMENT, Black's Law Dictionary (11th ed. 2019). These definitions are consistent with the trial court's finding—that Star made payment by "delivering" or "rendering" the checks to CHC to discharge its obligation.

Upon review, we find the language and statutory scheme of the PIP statute twice provides a definition of when benefits are considered paid. First, in Section 627.736(4), entitled "Payment of Benefits:"

> (b) Personal injury protection insurance benefits paid pursuant to this section are overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same. However:
>
> . . .
>
> 5. For the purpose of calculating the extent to which benefits are overdue, **payment shall be treated as being made on the date a draft or other valid instrument that is equivalent to payment was placed in the United States mail in a properly addressed, postpaid envelope or, if not so posted, on the date of delivery.**

§ 627.736(4)(b)5., Fla. Stat. (emphasis added).

> Second, in Section 627.736(10), entitled "Demand Letter:"

> (d) If, within 30 days after receipt of notice by the insurer, the overdue claim specified in the notice is paid by the insurer together with applicable interest and a penalty of 10 percent of the overdue amount paid by the insurer, subject to a maximum penalty of $250, no action may be brought against the insurer. If the demand involves an insurer's withdrawal of payment under paragraph (7)(a) for future treatment not yet rendered, no action may be brought against the insurer if, within 30 days after its receipt of the notice, the insurer mails to the person filing the notice a written statement of the insurer's agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10 percent, subject to a maximum penalty of $250, when it pays for such future treatment in accordance with the requirements of this

7

section. To the extent the insurer determines not to pay any amount demanded, the penalty is not payable in any subsequent action. **For purposes of this subsection, payment or the insurer's agreement shall be treated as being made on the date a draft or other valid instrument that is equivalent to payment, or the insurer's written statement of agreement, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.** The insurer is not obligated to pay any attorney fees if the insurer pays the claim or mails its agreement to pay for future treatment within the time prescribed by this subsection.

§ 627.736(10)(d), Fla. Stat. (emphasis added). We find these sections clearly provide that under the PIP statute payment shall be treated as being made on the date a check or other valid instrument is placed in the mail. See §§ 627.736(4)(b)5., 627.736(10)(d), Fla. Stat.

CHC asserts this Court should ignore this statutory language, arguing it only applies to determinations of whether a payment is overdue. CHC, instead asks this Court to define payment as being made when a check or other valid instrument sent to an insured is deposited.

First, it is a "'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.'" Lab. Corp. of Am. v. Davis, 339 So. 3d 318, 323–24 (Fla. 2022) (quoting Deal v. United States, 508 U.S. 129, 132, (1993)). Under the PIP statute, section

8

627.736(4) outlines how and when an insurer makes payment of benefits and section 627.736(10) details how an insurer receives notice of allegedly overdue claims. Thus, in the context of the PIP statute, these sections provide the procedure an insurer must follow in order to make proper payment of PIP benefits. Application of this definition of when payment is made to the PIP statute as a whole is appropriate—particularly as the PIP statute itself imposes strict deadlines on insurers for making payments.

Importantly, this section of text in the PIP statute defines when payment is overdue. Florida courts have long recognized the significance of defining when payment of benefits is overdue because it triggers other provisions contained in the PIP statute. See United Auto. Ins. Co. v. Rodriguez, 808 So. 2d 82, 86–87 (Fla. 2001) (noting an insurer has thirty days to verify a claim and becomes subject to specific penalties for an overdue payment, which are "intended to promote the prompt resolution of PIP claims"); Amador v. United Auto. Ins. Co., 748 So. 2d 307, 308 (Fla. 3d DCA 1999) ("If the insurer does not pay by the statutory 30–day period, on the 31st day, the insurer is itself in violation of the PIP statute and the insured is free to initiate a lawsuit to have the case determined on the merits."); Dunmore v. Interstate Fire Ins. Co., 301 So. 2d 502, 502 (Fla. 1st DCA 1974) ("The insurance company has thirty days in which to verify the claim after

9

receipt of an application for benefits. There is no provision in the statute to toll this time limitation."). Given the significance of overdue payments as delineated in the PIP statute, the plain language of this section should guide our analysis in defining when payment is considered made.

Second, this is further supported by the explicit legislative directive of the PIP statute. "The purpose of ss. 627.730-627.7405 is to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits." § 627.731, Fla. Stat. The Florida Supreme Court has stated "[w]ithout a doubt, the purpose of the no-fault statutory scheme is to 'provide swift and virtually automatic payment so that the injured insured may get on with his [or her] life without undue financial interruption.'" Ivey v. Allstate Ins. Co., 774 So. 2d 679, 683–84 (Fla. 2000) (quoting Gov't Emps. Ins. Co. v. Gonzalez, 512 So. 2d 269, 271 (Fla. 3d DCA 1987)). CHC's construction of the term "payment" would undermine this explicit directive as it would prevent "swift and virtually automatic payment." It would place insurers in a no-win situation. An insurer would be forced to either: (1) continue issuing checks— even while some previously issued checks remained undeposited—and risk paying more than the $10,000 statutory limit; or (2) wait to issue checks until all prior checks have been deposited and thereby risk violating the statutory

10

requirement to make payment within thirty days.[4]  We reject such a construction as absurd.  To adopt it would violate the plain language of the statute and render much of its remaining language superfluous.

## CONCLUSION

We find pursuant to the PIP statute, payment is "made on the date a draft or other valid instrument that is equivalent to payment was placed in the United States mail in a properly addressed, postpaid envelope."  §§ 627.736(4)(b)5., 627.736(10)(d), Fla. Stat.  No genuine issue of material fact exists in the record before us that benefits were exhausted by Star through its payment of valid claims.  Thus, the trial court properly awarded final summary judgment in Star's favor.

Affirmed.

---

[4] We further note that utilizing CHC's proposed definition of payment would render an insurer's ability to satisfy its obligation to make timely payment entirely reliant on actions over which it has no control—namely, the provider or insured's acceptance or deposit of payment.

11